[Civ. No. 29318.   Second Dist., Div. Two.   Apr. 25, 1966.]

SPACE CHEMICALS, INC., Plaintiff and Appellant, v. SPRAYON PRODUCTS, INC., Defendant and Respondent.

Brott & Feldan and Samuel L. Feldan for Plaintiff and Appellant.

Latham & Watkins and Max L. Gillam for Defendant and Respondent.

ROTH, P. J.—Space Chemicals, Inc., a California corporation (Space), appeals from an order granting the motion of respondent Sprayon Products, Inc., an Ohio corporation (Sprayon), to quash the service of summons and complaint made upon it, pursuant to the provisions of Code of Civil Procedure, section 411, subdivision 2, and Corporations Code, sections 6500-6504, by serving the California Secretary of State.

The sole question for determination is whether Sprayon is "doing business" in California within the meaning of Code of Civil Procedure, section 411, subdivision 2, and is therefore amenable to suit in this state.

The complaint names Sprayon as defendant. It alleges that on May 27, 1964, a contract in form of a letter was made (May letter). Sprayon agreed to pay Space a royalty of six cents per ounce of a certain formula developed by Space which was to be packaged by Sprayon into aerosol cans.

The product so processed was to be used in coating kitchen ware, grills, pans, pots and many other metallic utensils to prevent adherence of cooking materials and food to said utensils. Sprayon, in turn, delivered and invoiced this product to a previous customer of Space, to wit: Distmark, Inc., a California corporation, which in turn sold the product to consumers under the name of Slip O'Way. (This arrangement between the three companies is hereinafter referred to as the "California arrangement".)

A certain quantity of said formula had been delivered to Sprayon in accordance with the May letter for which Sprayon owes $37,124.54 plus 7 percent interest. The May letter was incorporated in the complaint and was signed by the representatives of the three corporations. It begins: "This will serve to confirm the understandings reached in Cleveland on May 26 and 27. Until such time as our relationship can be

reduced to a formal written contract, this letter of intent will cover the following points of agreements: . . . ." The May letter then provides in addition to the aforementioned royalty, that said royalty will be paid at the time Sprayon invoices Distmark for the product filled; that Space "on a no-charge delivered [the formula] F.O.B. Sprayon plant, Bedford Heights, Ohio, basis;" and that Space will furnish technical know-how regarding the compounding and processing of the formula.

Space's second cause of action, incorporating the foregoing facts, is based on goods furnished on open book account at an agreed value. The third cause of action is predicated on goods sold to Sprayon for an agreed price.

Upon service of the summons and complaint, Sprayon appeared specially and moved to quash, on the ground that it was not doing business in California. The motion was decided solely on affidavits filed by both parties, memoranda of points and authorities, and oral argument. The affidavits present no substantial factual conflict.

John Lingner, Jr., Vice President-Treasurer of Sprayon, declared that: Sprayon was organized and existed under the laws of Ohio alone; Sprayon's principal activity is the contract loading of paint products for manufacturers into aerosol containers; and that in its arrangement with Space and Distmark, Inc., no sales nor service activities have been or will be carried on in California. He further states that: prior to 1962, Sprayon was qualified to do business in California, but on May 11, 1962, surrendered all right to conduct intrastate business and has since withdrawn all assets and employees from California and has conducted no intrastate business therein; that Sprayon has no office, bank accounts, assets, place of business, merchandise, director, stockholders, officer or employee in California; only the Industrial Supply Division of Sprayon makes sales in California, and this is done through an independent manufacturer's representative, McCune Western, which contacts wholesalers and advises them of the availability of products of a large number of manufacturers, one of which is Sprayon; orders from the wholesalers are accepted and billed in Ohio.

Lingner further declared that the letter of intent upon which Space sues, was drafted, negotiated and executed in Ohio, to be performed in that state; and that Space and Distmark voluntarily came to Ohio and induced Sprayon to enter negotiations.

In opposition an affidavit was filed by James Caldwell, President of Space, which elaborated on the California arrangement. According to Mr. Caldwell, "Mr. Mike Salvaggio, assistant sales manager of Sprayon . . . visited the premises of Space Chemicals, Inc. in Burbank, California, approximately during the first week of March 1964, for the purpose of negotiating with my company and its prospective distributor, H.S. Products Co. of San Francisco, for the packaging by Sprayon . . . of a proprietary chemical formula made by Space Chemicals, which was to be sold on an exclusive contractual basis by H.S. Products Co. . . . Mr. Salvaggio solicited business from Mr. A. P. Wandke, President of H. S. Products Co., on behalf of Sprayon, and this first contact resulted a month later in very substantial business with Distmark, Inc.,[1] which—in some inexplicable manner—diverted H.S. Products' interest in Space Chemicals' Formula . . . , and subsequently managed to retain sole distribution rights for itself. [i.e. Distmark]."

The affidavit reveals that Salvaggio, Sprayon's representative, solicited several other customers while in California, including an order from Space for an unrelated Sprayon product.

It is not directly averred in any of the affidavits whether any arrangement was made or whether any flow of goods commenced prior to May 27, 1964. Mr. Caldwell does state, however, that "Total sales from Sprayon to Distmark [after the canning process] were in excess of $250,000.00 during the period from April through August 1964, and are continuing today, although Space . . . has not furnished any Formula 1167 to Distmark since May 1964, nor any Concentrate #670 to Sprayon since June 1964."

Mr. Caldwell also states that Mr. James C. Borlaug, President of Distmark, had been "a customer of Sprayon since April 1964. . . ."[2]

Regarding the May letter, Mr. Caldwell declares: "Mr. Borlaug . . . had induced me to join him in the trip to Cleveland to persuade Sprayon to extend to Distmark a more generous line of credit and credit terms than heretofore. That an agree-

---

[1] Mr. Caldwell's affidavit reveals that Distmark is a California corporation.

[2] Nothing in the record clarifies the distinction between the "Formula" and the "Concentrate". The excerpts quoted, however, do indicate that the California arrangement was under way prior to May 27, 1964.

ment was reached at that meeting between Sprayon and Space Chemicals . . . dated May 27, 1964. . . .

". . . Following negotiations between Distmark and Sprayon, which were based on the terms and conditions originally proposed by Mr. Salvaggio during his visit to California, as stated above, Sprayon sold to Distmark, Inc., and shipped the purchased product to Distmark's warehouse in North Hollywood, California. . . ."

Constitutionally, the power of a state to exert personal jurisdiction over a foreign corporation is limited by the rather malleable standard set forth in *International Shoe Co.* v. *Washington*, 326 U.S. 310, at p. 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057] : "Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding on him. *Pennoyer* v. *Neff*, 95 U.S. 714, 733 [24 L.Ed. 565, 572]. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]"

California has equated the "doing business" requirement of Code of Civil Procedure, section 411, subdivision 2, with the minimum contacts rule set forth in the *International Shoe Co.* case, *supra*; (*Jahn & Son, Inc.* v. *Superior Court,* 49 Cal.2d 855, 858 [323 P.2d 437] ; *Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 82 [346 P.2d 409]) and has thereby given its courts in personam jurisdictional power limited only by the due process clause of the 14th Amendment.

It is clear from the cases on the subject that it is not *any* activity in the state which will render a foreign corporation amenable to process. (*Martin Brothers Electric Co.* v. *Superior Court,* 121 Cal.App.2d 790, 793 [264 P.2d 183].) "In the final analysis it would seem that this is really not a question of the power of the state, but whether there is afforded to both parties a greater amount of justice by allowing suit in this state rather than requiring it elsewhere. (See 20 C.J.S. 148; *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)" (*Fielding* v.

*Superior Court,* 111 Cal.App.2d 490, 496 [244 P.2d 968].) Each case must be decided on its own facts.

Sprayon urges that the affidavits show nothing more than a solicitation of Sprayon by Space in Ohio, followed by negotiations an'd the execution of the May letter in that state, under which goods shipped F.O.B. Ohio, are to be processed there, then returned to California. This, however, is a narrow and constricted construction of the facts. Mr. Caldwell's affidavit reveals that a representative of Sprayon visited California prior to the Ohio meeting, and not only negotiated with Space, but solicited Space's distributor, Distmark, to sell the product in question to consumers much as it had been doing for Space. This affirmative conduct on the part of the foreign corporation in itself is significant in determining the extent to which the defendant has availed itself of the privileges and benefits of California law (compare *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 223-224 [78 S.Ct. 199, 2 L.Ed.2d 223] with *Hanson* v. *Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 2 L.Ed.2d 1283].)

We conclude that the California arrangement, stemming in part from affirmative solicitations in California, and resulting in a continuous flow of goods in and out of the state, constitutes contact with California sufficient to justify the assertion of in personam jurisdiction over Sprayon for the purposes of the suit at bench.

An overview of the California arrangement, reveals that Sprayon is merely a conduit between two California corporations engaged in the manufacture and marketing of that particular product. Sprayon not only receives the formula from Space for processing into aerosol cans, it delivers the finished product to Space's exclusive distributor, Distmark. Whether the sale to Distmark is actually made by Space or Sprayon (about which there is some controversy in the briefs), it is clear that Sprayon invoices the finishe'd product to Distmark and pays Space a royalty per ounce of formula purchased by the latter. This arrangement conceives a long-range, ongoing relationship between the parties involved. The royalties for which Space sues, are not part of a single, isolated transaction (see *Yeck Manufacturing Corp.* v. *Superior Court,* 202 Cal.App.2d 645, 651 [21 Cal.Rptr. 51]).

In *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1], guidelines for determining whether jurisdiction should be assumed are provided as fol-

lows: "The interest of the state in providing a forum for its residents [citations] . . . ; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry."

In the case at bench, a California corporation is suing for money allegedly owed to it. California clearly has an interest in providing Space a forum in which to conduct its litigation. While California is as inconvenient a forum for Sprayon as Ohio would be for Space, it is quite probable that Distmark, located in this state, may be brought into the litigation. In such an event, California would be the more convenient forum. In addition, the suit is directly related to Sprayon's contacts with California in the processing and distribution necessary under the California arrangement. In these circumstances we feel that the motion to quash should have been denied.

The order is reversed and the trial court is directed to require Sprayon to appear generally and plead to the complaint within such time as said court may in its discretion deem proper.

Herndon, J., and Fleming, J., concurred.