[Civ. No. 33372. Second Dist., Div. Four. Oct. 3, 1969.]

TIFFANY RECORDS, INC., Plaintiff and Appellant, v. M. B. KRUPP DISTRIBUTORS, INC., et al., Defendants and Respondents.

Schurmer & Bullis and Scott Schurmer for Plaintiff and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Clore Warne, Ira H. Lurvey, Mitchell, Silberberg & Knupp, Richard M. Mosk, Gordon, Weinberg & Gordon, Richard E. Posell, Diamond, Tilem & Colden, Stanley J. Diamond, Fulop, Rolston & Burns, Lowell R. Marks, Greenberg, Shafton & Bernhard, Edward B. Rasch, Pollock, Pollock, Fay & Baum, Frederick G. Stewart, Wyman, Bautzer, Finell, Rothman & Kuchel, Myer J. Sankary and Altman & Schwartz for Defendants and Respondents.

DUNN, J.—Appellant, a California corporation, and its predecessors in interest were engaged in the business of selling phonograph records at wholesale. Appellant instituted an action for money allegedly due under open book accounts, mutual accounts and because of unjust enrichment and damages for an alleged conspiracy and for breach of contract; appellant also sought an accounting. Named as defendants were 31 corporations and one individual, John Powell, a resident of California who was employed by appellant from 1960 to 1964. Appellant alleged that all of the corporate defendants were engaged in the business of distributing phonograph records, and that on various occasions between February 1959 and February 1965 each of these defendants purchased from appellant large quantities of phonograph records. It is alleged that money is due appellant from each defendant on account of such purchases.

Appellant also alleged that defendant Powell, while employed by appellant, conspired with all of the corporate defendants to injure appellant in its business. Such conspiracy, according to the complaint, took the form of over-allowances on freight; special credits for returned merchandise which was not, in fact, returned; over-allowances for advertising and radio promotion; excess discounts given by Powell and taken by all other defendants; excesses of free goods shipped to and received by the corporate defendants; differences and excesses allowed for returned merchandise credits; unearned discounts; and delivery of goods to all corporate defendants with no charge therefor. Powell allegedly had no authority to enter into such transactions. Appellant learned of defendants' alleged conduct in approximately April 1965 by investigation

and review of records relating to transactions between appellant and each of the corporate defendants.

In June 1967, appellant filed its amended complaint containing 146 causes of action and consuming 128 pages. On July 17, 1967, the court issued an order permitting service of process to be made upon 25 of the foreign corporate defendants by personal delivery of such to the Secretary of State pursuant to Corporations Code section 6501. Defendant Powell has not been served.

Of the 25 corporate defendants served, 12 (respondents herein) filed motions to quash service for lack of jurisdiction (Code Civ. Proc., § 416.1). Affidavits filed by respondents in support of their respective motions contain the following declarations in common: none of the respondents has ever had any office, place of business, directory listing, warehouse or inventory of any kind in California, nor does any respondent own real or personal property in California; none of the respondents has any employees, salesmen, agents, distributors or representatives in California; with the exception of isolated sales by a few of the respondents before the commencement of the instant action, none of the respondents has ever solicited the sale of, or sold, phonograph records in California; respondents ordered phonograph records only when solicited in person or by telephone call from appellant or by sending orders to appellant from respondents' respective home offices; there were no oral or written distribution agreements between appellant and any respondent; all of the phonograph records which respondents purchased from appellant were shipped from California to respondents at their respective home offices and distributed by respondents outside California; at no time did any of the respondents come to California in connection with the purchases; none of the respondents purchased any phonograph records from appellant after February 1965; in affidavits filed by six[1] of the respondents they deny the existence of a conspiracy, and some respondents state they have never met Powell.[2]

---

[1] M. B. Krupp Distributors, Inc.; Roberts Record Distribution Co.; Music Distributors, Inc. (Seattle, Washington); A. & L. Record Distributors; Music Distributors, Inc. (Chicago, Illinois); and Associated Record Distributors.

[2] In addition to the foregoing declarations, which apply in most particulars to all of the respondents, some of the respondents allege special circumstances, as follows:

Music Distributors, Inc. (Chicago, Illinois) asserts that as to it, any further determination of the issue of jurisdiction is barred by an order

Hearings on the motions to quash were had and in February 1968 an order was entered granting each of the motions. This appeal is taken from such order. The sole issue presented is whether respondents are subject to personal jurisdiction in California.

Code of Civil Procedure section 411. provides in pertinent part: ''The summons must be served by delivering a copy thereof as follows: . . . 2. If the suit is against a foreign corporation . . . doing business in this state: in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code.'' ■ In order to be subject to personal jurisdiction under the foregoing provision, a foreign corporation must be ''doing business'' in the sense that it has certain minimum contacts with this state so that the maintenance of the action does not offend traditional notions of fair play and substantial justice. Whatever limitation the term ''doing business'' imposes is equivalent to the due process clause. *Cosper* v. *Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77, 82 [346 P.2d 409], cert. denied (1960) 362 U.S. 927 [4 L.Ed.2d 746, 80 S.Ct. 755]; *Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 858 [323 P.2d 437].

■ Whether a foreign corporation has the requisite minimum contacts depends upon the facts involved in the particular case. *Space Chemicals, Inc.* v. *Sprayon Products, Inc.* (1966) 241 Cal.App.2d 680, 685 [50 Cal.Rptr. 746]; *Estwing Mfg. Co.* v. *Superior Court* (1954) 128 Cal.App.2d 259-261 [275 P.2d 146]. ■ ''[T]he analysis is concerned with weighing the various relevant 'contacts' by the foreign corporation within the state attempting to exercise jurisdiction. . . . But the analysis of the activities of a foreign corporation should not be considered merely quantitatively, but in terms of their 'quality and nature,' and their connection with the obligations

granting Music Distributors' motion to quash in an action against it in California commenced in 1966 by appellant's predecessor based upon substantially the same circumstances as those giving rise to the instant action.

Music Distributors, Inc. (Seattle, Washington) asserts that it did not purchase any phonograph records from appellant, but simply returned to appellant's predecessor some records included in an inventory which Music Distributors had purchased from one Gribble in Oregon.

Portem Distributing, Inc., asserts that it was legally dissolved on January 24, 1967.

Marshall Enterprises, Inc., asserts that it was dissolved and liquidated on February 8, 1965.

Astor Records, Inc., asserts that although it is not formally dissolved, it has not transacted any business whatsoever for five years.

sued upon." *Empire Steel Corp.* v. *Superior Court* (1961) 56 Cal.2d 823, 831-832 [17 Cal.Rptr. 150, 366 P.2d 502].

The 146 causes of action in this case are based upon respondents' purchases of phonograph records from appellant, and respondents' alleged participation in a conspiracy with Powell.

*Purchases.* On various occasions between February 1959 and February 1965 the respondents purchased phonograph records from appellant in the following manner: Respondents, at their respective home offices, placed orders when solicited in person or telephone call from appellant or by writing to appellant in California. The records were shipped from California to respondents and distributed by them in the areas of their respective home offices. At no time did any respondent come to California in connection with the purchases. A few of the respondents made isolated sales of records in California. but the records so sold were not purchased from appellant. There were, in essence, no more than purchases of goods from a California seller by foreign purchasers whose only contact with California was that orders for records were accepted by appellant in California and the records were shipped from California.

Jurisdiction over the parties is necessary to the validity of the judgments in personam (Code Civ. Proc., § 1917) sought here by appellant. Some of the rules governing our review are here pertinent. ■ Appellant has the burden of proof that each respondent was "doing business" in California in the sense required to make it amenable to process and subject to jurisdiction. *Brown* v. *Birchfield Boiler, Inc.* (1964) 226 Cal. App.2d 487, 488 [38 Cal.Rptr. 92]; *Yeck Mfg. Corp.* v. *Superior Court* (1962) 202 Cal.App.2d 645, 649 [21 Cal.Rptr. 51] (disapproved on other grounds in *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 903 at p. 893 [80 Cal. Rptr. 113, 458 P.2d 57]). ■ Furthermore, wherever affidavits filed in support of the motions to quash are in conflict with those opposing it we must deem the trial court resolved such conflicts against appellant and in support of its order. *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556, 562-563 [39 Cal.Rptr. 626].

At the outset we observed that no affidavit states facts disclosing existence of a conspiracy between respondents; the most that appears is the claim each respondent conspired with Powell, not with each other and Powell. A single California plaintiff has made claim against 25 foreign corporations but,

so far as appears, these claims are unrelated, and the claims against any one corporation are independent of other claims, there being no conspiracy between them shown. Each made purchases from appellant independent of the purchases by others. Over the time periods involved, purchases by the individual respondents ran from a low of 62 to a high of 620 separate transactions and, in dollar volume, from a minimum of $15,546.02 to a maximum of $184,878.21. The question to be answered is simple, namely, do these purchases by the various foreign corporations from a California corporation constitute the "minimum contacts" with this state necessary for it, constitutionally, to assume jurisdiction over respondents? As so often is the case the answer is more difficult.

One distinction observed between our case and that of most other cases is that, ordinarily, a foreign seller and a domestic purchaser are involved. This is not to say that a foreign buyer should be distinguished, legally, from a foreign seller; only that factual dissimilarities exist. Thus, *Henry R. Jahn & Son v. Superior Court* (1958) 49 Cal.2d 855 [323 P.2d 437] involved a foreign purchaser of goods in California and the Supreme Court observed (p. 859) : "Since there is no distinction for jurisdictional purposes between regular selling and regular buying . . . ." Factually, that case differs from our own in a number of respects: Jahn was exclusive export agent for a California partnership manufacturing products from plans allegedly pirated from plaintiff, for whom Jahn had been exclusive distributor under a contract. Thus, Jahn entered a contractual relationship created here. Jahn had twice sent one of its auditors to California to check on orders and, if they were properly filled, to pay for them. The plaintiff there had served the California partnership and, if required to sue Jahn in New York (where it apparently resided), plaintiff would have been required to file two actions inasmuch as New York had no basis for jurisdiction over Jahn's co-defendant partnership. In our case, if the respondents must defend here, there is strong likelihood that each will file a motion to sever its action from the others. If successful, appellant would be required to try each case separately. If unsuccessful, each respondent would be required to participate in discovery proceedings and in a trial in California in much of which it would have little or no interest, as being unrelated either to the liability or to the damage claimed against it.

At this writing, *Buckeye Boiler Co.* v. *Superior Court, supra,* is the latest Supreme Court decision on the point. Therein is contained the following discussion and the following rules (at pp. 898, 899 of 71 Cal.2d) :

"[3] A defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. (*Hanson* v. *Denckla,* 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228] ; *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199] ; *Henry R. Jahn & Son, Inc.* v. *Superior Court,* 49 Cal.2d 855, 860 [323 P.2d 437].) Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' (*Hanson* v. *Denckla, supra,* at pp. 251, 253 [2 L.Ed.2 at pp. 1296, 1297].) [4] Furthermore, unless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225, and authorities cited therein), the particular cause of action must arise out of or be connected with the defendant's forum-related activity. (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226] ; *International Shoe Co.* v. *Washington,* 326 U.S. 310, 319 [90 L.Ed. 95, 103, 66 S.Ct. 154, 161 A.L.R. 1057].)

"Once it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this activity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed. 2d 223, 226] ; *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225-226.) [5] In other words, once the threshold of sufficient activity by the defendant has been passed, the question of the propriety of subjecting the defend-

ant to the jurisdiction of the forum involves both a consideration of fairness to the plaintiff (see *Phillips* v. *Anchor Hocking Glass Corp.* (1966) 100 Ariz. 251 [413 P.2d 732, 19 A.L.R. 3d 1, 7]) and a determination of whether, from a standpoint of the logical and orderly distribution of interstate litigation, the forum state is what Professor Ehrenzweig has termed a 'forum conveniens.' (See Ehrenzweig, *The Transient Rule of Personal Jurisdiction: The 'Power' Myth and Forum Conveniens* (1956) 65 Yale L.J. 289, 312; see generally, von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis* (1966) 79 Harv.L.Rev. 1121.)''

In *American Continental Import Agency* v. *Superior Court* (1963) 216 Cal.App.2d 317 [30 Cal.Rptr. 654], it was held that a German corporation was amenable to process where the corporation had purchased aircraft parts in California for a total of $600,000 on a systematic basis pursuant to orders issued and mailed from Germany to California, and also had sent one of its directors to California on four occasions to expedite the sales. The court emphasized the importance of this additional factor by stating (at p. 322): ''. . . [T]here was more than the mere purchase of California goods pursuant to orders originating in Germany; on four occasions Mr. Kawalecki came to California for the purpose of expediting compliance by the vendor with the agreements for the sale of articles. . . . It is a reasonable assumption that such acts were of value to Anconia in obtaining the performance of the contractual obligations undertaken by the vendor.'' In *Prince* v. *Sonnie Gay, Ltd.*, (1964) 228 Cal.App.2d 541 [39 Cal. Rptr. 607], relied on by appellant, the court concluded that the corporate defendant was amenable to service of process where, in addition to the fact that the contract had been made in California, all of the stock in the defendant was owned by a California corporation, there was a systematic and continuous course of business involving substantial amounts between the two corporations, and an officer of defendant was also an officer of the California corporation.

In *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222 [347 P.2d 1] the court stated the following elements were relevant (pp. 225-226) in determining whether jurisdiction may constitutionally be assumed over a foreign corporation: (1) the interest of the state in providing a forum for its residents, and (2) in regulating the business involved, (3) the relative availability of evidence and the burden of defense

and prosecution in one place rather than another, (4) the ease of access to an alternative forum, (5) the avoidance of multiplicity of suits and conflicting adjudications and (6) the extent to which the cause of action arose out of defendant's local activity.

The state always has an interest in providing a forum for its residents; the question is, how great an interest is involved in any particular case. Here, appellant sent its employee out of state to solicit business and there is no showing of strong reason why appellant should not sue in the state where the business was procured.

As to regulating business, only appellant conducted a business in California and respondents seem unamenable to regulation here in that respect.

Presentation of the claims and defenses undoubtedly would oblige appellant and respondents to produce financial and accounting records as well as witnesses. If required to travel to another state, each would suffer hardship and one cannot say which would suffer the greatest handicap. There is no reason why Mohammed should not go to the mountain rather than the mountain come to Mohammed.

Appellant has access to courts of other states; indeed, the record shows appellant filed suit against one respondent in its home state.

As previously indicated, there is no hint of conspiracy between the respondents and if prosecution of this case goes forward there is some likelihood they can successfully move for severance of the actions against them. A multiplicity of suits, therefore, is quite possible and is not to be avoided by this state's assuming jurisdiction over the present action.

Respondents conducted no local activities. Their activities were out-of-state, and, at most consisted of the out-of-state placement or receiving of telephone calls, and the mailing of orders. Though such was apparently frequent in some instances, this is not activity within the state, but outside of it, and does not constitute that quality and nature of activity that would make it "fair" to require any respondent to defend itself here.

*Conspiracy.* Appellant's contention that the alleged conspiracy between each respondent and Powell subjects respondents to jurisdiction apparently is based on the theory that each member of a conspiracy is the agent of the others, and that where one conspirator acts in California pursuant to

the conspiracy, such act subjects his co-conspirators to jurisdiction in an action in California based on the conspiracy. This theory finds some slight support in two federal cases which rose in the Ninth Circuit.[3] However, these cases do not establish that where one conspirator is a resident of California, the nonresident members of the conspiracy are, as a matter of law, subject to jurisdiction under Code of Civil Procedure section 411, subdivision 2. Therefore, the ultimate inquiry must be whether the activities of respondents in connection with the alleged conspiracy were such that they can be said to have been ''doing business'' in California within the meaning of the statute. Since the question whether respondents were so doing business depends upon the particular facts involved (*Space Chemicals, Inc.* v. *Sprayon Products, Inc.* (1966) *supra*, 241 Cal.App.2d 680, 685; *Estwing Mfg. Co.* v. *Superior Court* (1954) *supra*, 128 Cal.App.2d 259, 261), we turn to the alleged facts of the conspiracy.

The affidavit of appellant's chief executive officer describes various fraudulent acts and practices of Powell. Affiant states: ''It was obvious to me from noting the above devices used by Powell that he had been acting as an instrument or agent of the individual distributors in the defrauding of our company to the mutual advantage of the distributor and Powell.'' Nowhere is any of the respondents mentioned by name, nor are any of the acts allegedly done by them set forth; affiant, at best, states only an opinion or conclusion and not acceptable proof. The trial judge was at liberty to ignore it, even if uncontroverted. *Lohman* v. *Lohman* (1964) 29 Cal. 2d 144, 149 [173 P.2d 657]; *Bender* v. *Hutton* (1911) 160 Cal. 372 [117 P. 322]; *Avila* v. *Meherin* (1886) 68 Cal. 478 [9 P. 428].

An affidavit of appellant's attorney states that Powell's deposition was taken in an earlier action (filed in 1965 by appellant's predecessor) in which the issues were similar to those in the instant action. In his deposition, Powell denied (characterized by affiant as ''evasion and negative an-

---

[3]*Giusti* v. *Pyrotechnic Industries* (9th Cir. 1946) 156 F.2d 351, cert. denied; *Triumph Explosives* v. *Giusti* (1946) 329 U.S. 787 [91 L.Ed. 675, 67 S.Ct. 355]; *De Golia* v. *Twentieth Century-Fox Film Corp.* (N.D. Cal. 1954) 140 F.Supp. 316. Each of these cases involved the question of proper *venue* in an action based on an alleged civil conspiracy in violation of the antitrust laws, and in each it was decided that the corporate defendants would be amenable to service of process under sections 6500 to 6504, inclusive, of the Corporations Code by virtue of the agency of their local co-conspirator.

swers'') any acts of misconduct or conspiracy to defraud. Affiant concludes that Powell's testimony would be of no probative value in establishing a conspiracy or ground for jurisdiction over respondents, and that for this reason he has not been served or his deposition taken in the present action.

Appellant also submitted the affidavit of a certified public accountant, who declares that his firm has examined the books, records and accounts of appellant pertaining to its transactions with each of the respondents. Attached to the affidavit is a table showing the total amounts purportedly due appellant from each respondent.

While a conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators and other circumstances, *Wise* v. *Southern Pac. Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652] ; *James* v. *Herbert* (1957) 149 Cal.App.2d 741, 747 [309 P.2d 91], the issue here is not simply whether there was a conspiracy. It is whether respondents' acts, if any, done pursuant to the alleged conspiracy were such that they can be said to have been doing business in California so as to be subject to jurisdiction.

The burden of proof is on appellant to establish that respondents were doing business in this state. Appellant has not presented such proof that respondents performed or participated in the acts and practices allegedly done, as to require or permit us to disagree with the trial court's apparent finding that no conspiracy was shown. So far as appears from the affidavits, Powell acted in California solely for his own gain. The statement of the court in *Smith & Wesson, Inc.* v. *Municipal Court* (1955) 136 Cal.App.2d 673, 679 [289 P.2d 26], is equally true here: ''While it might have been shown by additional evidence that [respondents], at the time, may have been doing business in this state within the meaning of the statute, we must conclude that [appellant has] not met the burden of proof. The facts adduced at the hearing of the motion in this case are not sufficient to make [respondents] amenable to process of the courts of this state.''

We conclude that neither respondents' purchases of phonograph records from appellant nor respondents' alleged participation in the conspiracy requires a California court to assume personal jurisdiction of respondents under Code of Civil Procedure section 411, subdivision 2.

In view of the foregoing conclusion, it is unnecessary that we consider other points raised by respondents, both jointly and individually.

The order granting the motions to quash service of summons is affirmed.

Files, P.J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 26, 1969. Mosk, J., did not participate therein.