**THOS. P. GONZALEZ CORPORATION,**
**Plaintiff-Appellant,**

v.

**CONSEJO NACIONAL DE PRODUC-**
**CION DE COSTA RICA, and Sergio**
**Quiros Maroto, Defendants-Appellees.**

**No. 77–3312.**

United States Court of Appeals,
Ninth Circuit.

March 10, 1980.

---

J. A. Uribe, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for plaintiff-appellant.

Robert A. Fletcher, Fletcher, Raugh & Mahoney, Los Angeles, Cal., for defendants-appellees.

Before TRASK and SNEED, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Thos. P. Gonzalez Corp. (Gonzalez), a California corporation, appeals the District Court's judgment entered September 26, 1977, dismissing the action and setting aside the default judgment entered against the Consejo Nacional de Produccion de Costa Rica (the Consejo) and Sergio Quiros Maroto (Quiros), executive president of the Consejo, on February 26, 1976. We note jurisdiction and affirm.

*ISSUES ON APPEAL*

Gonzalez presents the following issues on appeal:

1. Did the Consejo and Quiros have sufficient contacts with California to justify a District Court in California exercising personal jurisdiction over them?

2. Did service of the summons and complaint to the Costa Rican Consul General in Los Angeles with the request that he forward them to the Ministry of Foreign Affairs in Costa Rica constitute effective service of process?

3. Did the Court abuse its discretion in granting relief from default for mistake, inadvertence, surprise, and excusable neglect?

*FACTS*

Gonzalez is an international grain trader with its principal place of business in California.

The Consejo is an autonomous institution of the Republic of Costa Rica charged with, *inter alia*, regulating the Costa Rican food supply by purchasing grain when needed from foreign sources and by selling surplus grain. Article 1 of the Consejo's organic law provides that the Consejo shall have its own legal capacity and shall be vested with functional and administrative autonomy as provided for in Article 188 of Costa Rica's Political Constitution. Its funds are appropriated by the Costa Rican government and any net profit from its operations belongs to the government.

During the period from May 1971 to December 1974, the Consejo transacted 15 purchases of grain from Gonzalez and two sales to Gonzalez. Each transaction originated in a bid by a representative of Gonzalez in Costa Rica in response to an invitation to bid circulated by the Consejo in Costa Rica. Each was entered into by an agent of Gonzalez residing in Costa Rica, although, on one occasion not involving the contract at issue in this case, three representatives of the Consejo visited Los Angeles to sign the formal contracts for two transactions. There was frequent communication by mail and telex between the Consejo and Gonzalez's Los Angeles office concerning the contracts. All the contracts specified delivery in Costa Rica. In none of the transactions, including the one in dispute, was California either the source or destination of the grain. The Consejo made payment by having its bank in Costa Rica issue letters of credit which Crocker National Bank in California confirmed, although the contracts specified only that payment be by letter of credit in United States or Costa Rican currency.

During this period, the Consejo had neither an office, a place of business, property nor an agent in California. It did not advertise in California nor actively solicit business there. It has never attempted to qualify for the transaction of business within California.

The contract involved in this case was entered into in Costa Rica by an exchange of letters between the Consejo and Gonzalez's representative in Costa Rica. Gonzalez agreed to sell the Consejo 10,000 metric tons of yellow corn, C.I.F. Costa Rica, with

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

delivery in June and July, 1975. The Consejo cancelled the contract before delivery was made, first citing delays in shipments by Gonzalez as the reason and later referring to Gonzalez's noncompliance with its obligation to post a completion guarantee. Gonzalez filed its complaint for breach of contract on September 25, 1975. Jurisdiction in the District Court was based on diversity of citizenship under 28 U.S.C. § 1332(a)(2).

On October 16, 1975, a U.S. Marshall, on instructions of counsel for Gonzalez and without court order, served process on the Consul General of Costa Rica in Los Angeles requesting that he "notify the Ministry of Foreign Affairs in San Jose, Costa Rica through normal diplomatic channels." The Consejo did receive notice of the suit on November 6, 1975. A copy of the summons and complaint was also delivered personally to Lic. Nelson Alvarado Forseca (Alvarado), legal advisor to the Consejo, who was in California to discuss performance under a different contract. Alvarado arranged for local counsel to represent the Consejo in the matter.

On November 20, 1975, counsel for Gonzalez wrote to the Costa Rican Consul General indicating that a default would be taken unless an answer was filed within two days. The same message was sent to Alvarado in Costa Rica. No response was made, and on January 15, 1976, a default entry was made. On February 26, judgment by default was entered.

On March 27, 1976, the Consejo received a letter from its California attorney stating that he had not been able to cash the fee check sent to him, that he would not continue with the case until he received a bearer's check or money order, and that unless immediate action was taken, judgment would be entered against the Consejo. The Consejo then consulted another attorney in the United States who discovered that a default judgment had already been entered. The

Consejo then retained its present counsel who filed a motion to set aside the judgment and dismiss the action for lack of personal jurisdiction on January 11, 1977, and a motion for relief from default judgment for mistake, inadvertence, surprise, and excusable neglect on January 12, 1977. The jurisdictional motion was set for argument a month earlier than the other motion, because the latter would be moot if the former were granted. If the Court denied the jurisdictional motion, however, counsel wanted an opportunity to have the default set aside and to argue the case on the merits. By order of the Court, the hearings on the two motions were moved to the same day, and on March 10, the Court's order simultaneously granting both motions was entered.

## DISCUSSION

### 1. *Personal Jurisdiction.*[1]

■ A party's amenability to suit in a federal court based on diversity is determined by reference to the law of the state in which the federal court sits. *Republic International Corp. v. Amco Engineers, Inc.*, 516 F.2d 161 (9th Cir. 1975). California's long-arm statute provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." California Code of Civil Procedure § 410.10. In *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir.), *cert. denied*, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974), this Court described the reach of this statute:

> "The jurisdiction of the California courts is therefore coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." (Footnote omitted.)

■ The seminal case for the current law on personal jurisdiction is *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in which the Supreme Court held that:

1. Gonzalez has not even attempted to show how Quiros has subjected himself, in his individual capacity, to the jurisdiction of the District Court in California. The record is devoid

of any facts establishing contact between Quiros and the State. Our discussion will refer only to the Consejo, but our holdings are intended to apply to Quiros as well.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

This restriction on the states is not merely a protection against inconvenient litigation; it is "a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958).

"However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." *Id.*

*Hanson* also made clear that only the defendant's purposeful activities in the forum state, and not the plaintiff's actions, can justify the exercise of jurisdiction.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239–1240.

The *International Shoe* standard was recently reaffirmed in *World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

▪ Whether a party's contacts are sufficient to permit the state to compel it to defend itself in the state's courts depends upon the facts of each case. This Court discussed the mode of analysis in *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977):

"If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. [Citations omitted.]

"If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. In our circuit, we use the following approach in making this evaluation: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable. [Citations omitted.]"

In *Data Disc*, a California seller charged an out-of-state buyer with breach of contract. The place of negotiation and execution of the contract was in dispute. Nevertheless, the Court of Appeals reversed the District Court's dismissal for lack of personal jurisdiction. Although it found no "substantial" or "continuous and systematic" contacts with California, it did find actions by which the defendant "purposefully availed itself of the privilege of carrying out activities in that state" and which "were beneficial" to defendant. *Id.* at 1287–88. Specifically, defendant conducted at least some contract negotiations in California, sent one of its own engineers to work on the project at Data Disc's California office, and sent personnel to visit Data Disc on five occasions to discuss late and defective equipment supplied under the contract.

Similarly, in *Republic International Corp.*, the Court of Appeals affirmed the District Court's finding of personal jurisdiction by California over defendant Ministry of Public Works, Republic of Uruguay. The significant contact in this case was the Minis-

try's dispatch of its own engineers to Amco's Los Angeles office for five to six months.

Gonzalez relies most heavily on *American Continental Import Agency v. Superior Court*, 216 Cal.App.2d 317, 30 Cal.Rptr. 654 (1963). In that case, a German import business negotiated with some United States suppliers in Germany, issued purchase orders in Germany, paid through German banks, and obtained delivery directly to its customers in Germany. It had no agents or office in the United States. The Court upheld jurisdiction, nonetheless, referring to the German corporation's activities as a systematic and continuous course of business in substantial amounts.

■ Subsequent opinions of the California Supreme Court, however, distinguish *American Continental* and emphasize that the significant fact which led to its result was the four visits by a representative of the German corporation to California to expedite compliance with the sales contracts which gave rise to the litigation. *Tiffany Records, Inc. v. M. B. Krupp Distributors, Inc.*, 276 Cal.App.2d 610, 81 Cal.Rptr. 320 (1969); *Interdyne Co. v. SYS Computer Corp.*, 31 Cal.App.3d 508, 197 Cal.Rptr. 499 (1973). Moreover, it is clear from the later cases that it is not the quantity, but rather the "nature and quality" of the defendant's activities which determine whether extension of jurisdiction offends due process. *Belmont Industries, Inc. v. Superior Court of Stanislaus County*, 31 Cal.App.3d 281, 107 Cal.Rptr. 237, 241–42 n.4 (1973); *Tiffany Records*, 81 Cal.Rptr. at 324.

Likewise, the recent cases distinguish the oft-cited case of *Henry P. Jahn & Son, Inc. v. Superior Court*, 49 Cal.2d 855, 323 P.2d 437 (1958), because in that case the defendant made regular purchases of goods manufactured in California from plaintiff, its exclusive export agent, with title passing in California.

In *Belmont Industries*, a Pennsylvania purchaser of drafting services from a California corporation was held not subject to jurisdiction in California. The contract was negotiated by interstate communications; the purchase order was executed in Pennsylvania; performance by the seller was not required to be in California, though it was "undoubtedly contemplated"; and on four or five occasions, the purchaser sent an employee to the seller's office in California to discuss jobs in progress, but not the one which gave rise to the litigation. The court stated:

"Irrespective of the number of contracts, the substance of petitioner's activities within this state has been the same—the purchase of services from residents by contracts executed outside of the state. The occasional act of sending an employee into the state to expedite the services adds nothing to the relationship between petitioner and the state. (Cf. *American Continental Import Agency v. Superior Court, supra*, 216 Cal.App.2d at p. 322, 30 Cal.Rptr. 654.) We note that petitioner sent no representatives into California in connection with the contract giving rise to the present litigation." 107 Cal.Rptr. at 242 n.4.

In *Tiffany Records* and *Interdyne*, California sellers solicited orders from foreign purchasers. The only contacts with California were letters and telephone calls. The court stated in *Interdyne*:

"When a California business seeks out purchasers in other states—purchasers who are not 'present' in California for general purposes—deals with them only by out-of-state agents or by interstate mail and telephone, it is not entitled to force the customer to come to California to defend an action on the contract." 107 Cal.Rptr. at 501.

*Floyd J. Harkness Co. v. Amezcua*, 60 Cal.App.3d 687, 131 Cal.Rptr. 667 (1976), involved an agreement between a California corporation and a citizen and resident of Mexico. The agreement was negotiated and was to be performed in Arizona and Mexico, although there was frequent phone contact with the plaintiff in California. The agreement included advances of money by plaintiff and the execution of promissory notes payable in California by defendant.

The court found the contacts too "tenuous" to support jurisdiction:

"The acts of making notes executed elsewhere by a nonresident defendant payable to a California resident in California or the acts of making interstate telephone calls relative to the performance of a contract executed outside the state and performed outside the state does not invoke the benefits and protections of our laws." 131 Cal.Rptr. at 670.

This Court affirmed the Northern District of California District Court's dismissal for lack of personal jurisdiction in *H. Ray Baker, Inc. v. Associated Banking Corp.,* 592 F.2d 550 (9th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). This was an action on a letter of credit issued by Associated Banking Corp., a Philippine corporation, to be advised and paid through a New York bank.[2] Despite the fact that the corporation maintained deposits with six California banks for the purpose of providing the same type of services at issue in the case, those banks had not confirmed the credit in that particular transaction. The court found neither substantial, systematic contacts with California which would justify general jurisdiction nor sufficient contacts relevant to the specific transaction.

And in *Sibley v. Superior Court of Los Angeles County,* 16 Cal.3d 442, 546 P.2d 322, 128 Cal.Rptr. 34 (1976), the court held that it could not constitutionally assert jurisdiction over a non-resident individual solely because he executed a guarantee agreement regarding payment of money owing to a California corporation.

The facts in the present case which Gonzalez urges are sufficient grounds for jurisdiction are the Consejo's regular sale and purchase agreements with a California resident, payment in California by confirmed letters of credit from Crocker National Bank, frequent communications between the Consejo and Gonzalez concerning the transactions, execution of two contracts in California by representatives of the Consejo, and the visit by Alvarado to discuss performance under a prior contract.

■ The Consejo correctly notes that only its activities in California, and not Gonzalez's, can supply the basis for jurisdiction. It is not sufficient that the plaintiff is a California resident, *Hill v. Noble Drilling Corp.,* 61 Cal.App.3d 258, 132 Cal.Rptr. 154, 156 (1976), or that an act outside California imposes an economic burden on a California resident, *Dallas-Fort Worth Regional Airport Board v. Superior Court,* 63 Cal.App.3d 482, 133 Cal.Rptr. 720, 721 (1976). It denies that its transactions with Gonzalez constituted a systematic and continuous course of business within the forum and emphasizes that the transactions were the result of public bidding in Costa Rica. Furthermore, the number of transactions, which incidently is smaller than the number in *Belmont Industries,* and the amount of money involved do not reflect the quality or nature of the contacts and, therefore, should not be considered.

The Consejo points out that any contact resulting from the letters of credit was between its Costa Rican Bank and Crocker, not between the Consejo and Crocker. Moreover, no payment had yet been made

2. The court discussed the function and operation of a letter of credit in *Baker,* 592 F.2d at 552–53:

"A letter of credit is an undertaking by the issuing bank, usually in the buyer's country, that it will pay a draft drawn on it by the seller upon presentation of specified documents, such as a bill of lading. This permits the seller to substitute the credit of a bank with an established international reputation for that of a foreign buyer whose credit worthiness may not be known in the seller's country. The bank's obligation under the letter of credit is independent of the underlying sales contract. If the presented documents comply with the terms of the letter of credit, the bank is obligated to pay regardless of whether the goods themselves conform to the contractual terms. The issuing bank instructs its correspondent in the seller's country to 'advise' the credit; that is, to notify the beneficiary of the existence and terms of the credit. The advising bank assumes no duty of payment unless it 'confirms' the credit at the issuing bank's request, thereby becoming independently liable to the beneficiary." (Footnote omitted.)

under the contract in dispute, and the contract did not expressly require payment through a California bank.

■ The Consejo validly argues that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state. *E. g., Harkness*, 131 Cal.Rptr. at 670.

The Consejo minimizes the significance of the visit to California by Consejo representatives to execute the formal documents on two prior transactions. The important event, in its view, was the prior award of the contract to Gonzalez's Costa Rican representative. We find the crucial fact to be that this visit pertained only to transactions not at issue in this case. This circumstance was the feature that distinguished *Belmont Industries* from *American Continental, Data Disc*, and *Republic International*.

■ Likewise, Alvarado's visit also concerned a different contract. And, as the Consejo notes, this visit occurred after the filing of the complaint in this action so it cannot establish jurisdiction.

In *Foster v. Mooney Aircraft Corp.*, 68 Cal.App.3d 887, 137 Cal.Rptr. 694, 697 (1977), the court stated:

"In analyzing the defendant's activities we must focus upon 'economic reality' rather than a mechanical checklist. (*Buckeye Boiler Co. v. Superior Court*, supra at [71 Cal.2d 893,] 903, 80 Cal.Rptr. 113, 458 P.2d 57.) An enterprise obtains the benefits and protection of our laws if as a matter of commercial actuality it has engaged in economic activity within this state. (*Id.*, at p. 901, 80 Cal.Rptr. 113, 458 P.2d 57.)"

■ We agree that Gonzalez has not established a systematic and continuous course of business by the Consejo in California which would justify general jurisdiction. Moreover, the economic reality is that the Consejo has not performed any act relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California. Its actions within the state were unrelated to Gonzalez's present claim. Requiring the Consejo to submit to the jurisdiction of the court in this case would thus be unreasonable and violative of due process. *See Data Disc*, 557 F.2d at 1287.

Gonzalez argues alternatively that the minimum contacts standard as applied to foreign states has been redefined by the federal long-arm statute contained in the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 (1976) (codified at 28 U.S.C. §§ 1330, 1602–1611). Gonzalez claims that under this new definition, the Consejo's contacts with the forum are sufficient to justify the District Court's exercise of jurisdiction. Although the Act did not become effective until after Gonzalez filed its complaint, the Act has been held to be retroactive by the District Court for the Southern District of New York. *Yessenin-Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 851 n.1 (S.D.N.Y.1978).

28 U.S.C. § 1330(b) grants the district courts personal jurisdiction over foreign states in situations in which those states are not entitled to sovereign immunity, as determined in §§ 1605–1607, and when service has been made pursuant to § 1608.[3] The Consejo probably fits within the broad definition of "foreign state."[4] The relevant

---

**3.** 28 U.S.C. § 1330 reads:

"(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

"(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over

which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."

**4.** 28 U.S.C. § 1603 provides:

" . . .

"(a) A 'foreign state', except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

"(b) An 'agency or instrumentality of a foreign state' means any entity—

language in § 1605(a)(2), cited by Gonzalez as the basis for jurisdiction over the Consejo, denies sovereign immunity when the action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

The words "direct effect" in the clause cited by Gonzalez have been interpreted as embodying the minimum contacts standard of *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158, and the requirement of *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239, that the defendant purposely avail itself of the privilege of conducting business within the forum. *Carey v. National Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979). *See East Europe Domestic International Sales Corp. v. Terra*, 467 F.Supp. 383, 388–90 (S.D.N.Y. 1979). The legislative history of the Act confirms that the reach of § 1330(b) does not extend beyond the limits set by the *International Shoe* line of cases.[5]

> "(1) which is a separate legal person, corporate or otherwise, and
> "(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> "(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country."

5. H.Rep. No. 54–1487, 94th Cong., 2d Sess. 13–14 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News at pp. 6604, 6612, describes § 1330(b) as follows:

> "(b) *Personal Jurisdiction.*—Section 1330(b) provides, in effect, a Federal long-arm statute over foreign states (including political subdivisions, agencies, and instrumentalities of foreign states). It is patterned after the long-arm statute Congress enacted for the District of Columbia. Public Law 91–358, sec. 132(a), title I, 84 Stat. 549. The requirements of minimum jurisdictional contacts and adequate notice are embodied in the provision. Cf. *International Shoe Co. v. Washington*, 326 U.S. 310 [, 66 S.Ct. 154, 90 L.Ed. 95] (1945), and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 [, 78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957). For personal jurisdiction to exist under section 1330(b), the claim must first of all be one over which the district courts have original jurisdiction under section 1330(a), meaning a claim for which the foreign state is not entitled to

▮ Personal jurisdiction under the Act requires satisfaction of the traditional minimum contacts standard. Because we have already determined that Consejo did not have the requisite minimum contacts, we need not decide and, therefore, decline to consider whether this action is governed by the Foreign Sovereign Immunities Act.[6]

2. *Service of Process.*

Although we do not approve the method of service attempted here, our holding that the District Court did not have personal jurisdiction over the Consejo because the required minimum contacts were lacking makes it unnecessary for us to actually decide whether service was valid.

3. *Relief from Default.*

▮ It is well-established that a judgment entered without personal jurisdiction over the parties is void. *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423, 426 (9th

> immunity. Significantly, each of the immunity provisions in the bill, sections 1605–1607, requires some connection between the lawsuit and the United States, or an express or implied waiver by the foreign state of its immunity from jurisdiction. These immunity provisions, therefore, prescribe the necessary contacts which must exist before our courts can exercise personal jurisdiction. Besides incorporating these jurisdictional contacts by reference, section 1330(b) also satisfies the due process requirement of adequate notice by prescribing that proper service be made under section 1608 of the bill. Thus, sections 1330(b), 1608, and 1605–1607 are all carefully interconnected." (Footnotes omitted.)

6. Gonzalez relies on *National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622, 639 (S.D.N.Y.1978), aff'd, 597 F.2d 314 (2d Cir. 1979), which stated in dictum that the breach of a letter of credit having a beneficiary within the forum and advised by and payable through banks in the forum "would appear to satisfy" the above-cited language in § 1605(a)(2). Not only are we unconvinced that such a breach alone would fulfill the minimum contacts requirement, but we find the case distinguishable since there was no breach of a letter of credit by the Consejo. Indeed, there was not even a letter of credit in existence since the Consejo is alleged to have breached the contract by not issuing its letter of credit.

Cir. 1973); *Marshall v. Board of Education, Bergerfield, N. J.*, 575 F.2d 417, 422 (3d Cir. 1978); *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969). The Consejo made a proper request, pursuant to Fed.R. Civ.P. 60(b)(4),[7] to be relieved of the default judgment on the ground that it was void for lack of personal jurisdiction.

> "Necessarily a motion under this part of the rule differs markedly from motions under the other clauses of Rule 60(b). There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4). Nor is there any requirement, as there usually is when default judgments are attacked under Rule 60(b), that the moving party show that he has a meritorious defense. Either a judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly." (Footnotes omitted.) Wright & Miller, Federal Practice & Procedure: Civil § 2862, at 197.

We have been asked to review the District Court's exercise of discretion in granting relief from default for mistake, inadvertence, surprise, or excusable neglect, under Rule 60(b)(1). The District Court did not need to and should not have reached that question. The motion filed by the Consejo on January 11, 1977 was adequate to warrant both dismissal of the action and complaint and relief from the default judgment. If the Court had ruled properly on that motion, the Rule 60(b)(1) argument would have been moot.

Nevertheless, as this Court said in *Davis v. United States*, 589 F.2d 446, 448 n.3 (9th Cir. 1979):

> "Even if we disagree with the district judge's reasoning, we may nevertheless affirm his disposition 'on any ground squarely presented on the record.' *Grosz v. Andrus*, 556 F.2d 972, 974 n.3 (9th Cir. 1977); *M.O.S. Corp. v. John I. Haas Co.*, 375 F.2d 614, 617 (9th Cir. 1967); *see Jaffke v. Dunham*, 352 U.S. 280, 281, 77

S.Ct. 307, 1 L.Ed.2d 314 (1957) (per curiam)."

Not only "may" we affirm, we "must" in fact affirm. "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). This axiom is echoed in numerous cases of this Circuit. *See, e. g., United States v. Crain*, 589 F.2d 996, 1001–02 n.9 (9th Cir. 1979); *United States v. Best*, 573 F.2d 1095, 1100–01 (9th Cir. 1978); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1219 (9th Cir. 1977); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).

Because it is clear from the record that the District Court did not have personal jurisdiction over the Consejo and the judgment was, therefore, void, the District Court had a nondiscretionary duty to grant relief from the default judgment. We affirm that decision of the District Court and offer no opinion on whether the result would have been justified pursuant to Rule 60(b)(1)'s provision for relief for mistake, inadvertence, surprise, or excusable neglect. The judgment and order setting aside the default judgment and dismissing the action and complaint are, therefore, affirmed.

AFFIRMED.

---

7. Rule 60(b) reads:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . (4) the judgment is void; . . . .."