[Civ. No. 2587. Fifth Dist. July 30, 1976.]

FLOYD J. HARKNESS CO., INC., Plaintiff and Appellant, v.
EDUARDO AMEZCUA, Defendant and Respondent.

COUNSEL

Rowell, Lamberson, Thomas & Hiber, Lawrence E. Viau, Jr., and Timothy Born for Plaintiff and Appellant.

Irwin & Thuesen and Donald C. Thuesen for Defendant and Respondent.

## OPINION

.BROWN (G. A.), P. J.—Plaintiff, a California corporation with principal place of business in Fresno County., appeals from an order granting the motion of defendant Eduardo Amezcua to quash service of summons on the defendant. The summons was served on defendant in the country of Mexico.

The essential facts are not in substantial dispute. Any conflicts that may exist, however, are resolved in favor of the prevailing party and the trial court's order. (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320].)

From the affidavits filed in support of and in opposition to the motion, it appears that defendant is a citizen and resident of the country of Mexico and that he is not authorized to nor has he conducted business in California. He has owned no property in California, has no agents here, nor was he present in California at any relevant time prior to, during or after the execution of the contract and notes about to be described.

Written contracts executed in the summer of 1971 and in the summer of 1972 were entered into between plaintiff and defendant, under the terms of which in substance and insofar as germane here the defendant agreed to grow a crop of vegetables during the Mexican winter vegetable seasons of 1971-1972 and 1972-1973 and consign them from Mexico to plaintiff at Nogales, Arizona, for packing and distribution by plaintiff throughout the United States. The plaintiff in turn agreed to finance the planting, growing, harvesting and shipping of the produce to plaintiff's place of business in Nogales, Arizona. The advances that plaintiff made were to be represented by promissory notes executed by defendant. The contract was prepared and signed by plaintiff in Fresno and sent to the defendant in Mexico, where it was signed by the defendant. The agreement was negotiated in Arizona and Mexico.

The moneys advanced by plaintiff came from Fresno, California, and were deposited in the account of defendant in a bank in Nogales, Arizona. In return for the money, the defendant executed in Mexico a

promissory note for each advance, payable to plaintiff in Fresno, California, and delivered each of the notes at the time of the advance to plaintiff's agent in Nogales, Arizona. The notes served as evidence of the advances made by plaintiff, and plaintiff was to be reimbursed for the advances out of the proceeds from the sale of the produce, the produce having been delivered to plaintiff on consignment in Nogales, Arizona.

Plaintiff became qualified to do business in Arizona on January 27, 1969, and maintained an office in Nogales and a bank account for the receipt and distribution of funds necessary to carry out the terms of the agreement. Records of expenses and income, sales, disbursements and invoices also were made and maintained in Nogales. The moneys advanced to the defendant, however, came from Fresno, and the advances had to be approved by plaintiff's Fresno office. Since the expiration of these agreements, the plaintiff has ceased to do business in Arizona, and all of plaintiff's records of those transactions are now in Fresno.

During the performance of the agreements there were many contacts by telephone between defendant in Arizona or Mexico and plaintiff's office in Fresno, initiated both by the defendant and plaintiff.

The contracts signed in the summers of 1971 and 1972 were identical in form to a contract that was signed between the same parties in the summer of 1970 concerning the 1970-1971 Mexican winter vegetable season.

Pursuant to the requirements of the contracts, defendant executed in Mexico and delivered eight promissory notes to the plaintiff in Nogales, Arizona, which bear dates between October 1971 and April 1973. The notes are made payable in Fresno, California. The amount due upon the notes is alleged to be a total of $157,874.47 plus interest. The complaint herein is for the alleged nonpayment of those promissory notes and upon the theory of an account stated in the same amount.

DISCUSSION

In *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322], the California Supreme Court reviewed the law applicable to the exercise of personal jurisdiction over a nonresident individual under California's "long arm" statute.[1] We do not propose to repeat the

---

[1]The central jurisdictional feature of California's long arm statute is contained in Code of Civil Procedure section 410.10 which provides: "A court of this state may exercise

Supreme Court's comprehensive discussion of in personam jurisdiction over a nonresident defendant but are content to summarize those principles that are applicable to the facts before us.

■ Minimal contacts with this state essential to the exercise of jurisdiction over a nonresident defendant may be grounded in (1) doing an act in this state or (2) causing an effect in this state by an act or omission which occurs elsewhere. In either case, however, this state does not have jurisdiction if the maintenance of the suit offends "traditional notions of fair play and substantial justice" and the nature of the act done in this state or the nature of the effect of the act done elsewhere and the nature of the individual's relationship to the state "makes the exercise of such jurisdiction unreasonable." (*Sibley* v. *Superior Court, supra,* 16 Cal.3d at pp. 445-446; see also *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154, 158-159, 161 A.L.R. 1057]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].) Obviously, the resolution of the issue as to whether jurisdiction may be exercised by this state depends upon the totality of facts and circumstances in each case.

■ Stripping the gloss of advocacy from plaintiff's argument, his contention that California has jurisdiction is predicated upon these California related activities: (1) plaintiff's acts of advancing funds from California to defendants in Arizona or Mexico; (2) the fact that the promissory notes were made payable in California; (3) the interstate telephone calls between Arizona or Mexico and California concerning the performance of the contract. Upon analysis, it is evident that the effect of these activities in California is too attenuated to use them as a basis for establishing jurisdiction in our courts. To predicate jurisdiction on contacts as tenuous as those here would not only offend traditional notions of fair play and substantial justice but would be unreasonable. (See *Sibley* v. *Superior Court, supra,* 16 Cal.3d at pp. 445-446.) We proceed to the reasons for this conclusion.

In examining the quality and nature of the activities in this state, it is settled that we are not concerned with the performance of the plaintiff in California but exclusively with the nonresident defendant's activities in this state. It is the latter activities which must provide the basis for jurisdiction. *(Cornell University Medical College* v. *Superior Court* (1974)

jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

38 Cal.App.3d 311, 316 [113 Cal.Rptr. 291].) It follows that the fact that the plaintiff advanced money from California, a fact upon which plaintiff places heavy reliance, is virtually eliminated as a factor to be weighed herein.

There is no evidence that defendant purposefully availed himself of the privilege of conducting activities within California, thus invoking the benefits and protections of its laws. In *Sibley* v. *Superior Court, supra,* 16 Cal.3d at pages 446-447, the court said: "In *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], for example, the high court held that in those cases in which jurisdiction is sought on the basis of defendant's occasional activities, '. . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' (*Id.,* at p. 253 [2 L.Ed.2d at p. 1298].) In *Buckeye Boiler* [*Co.* v. *Superior Court* (1969) 71 Cal.2d 893 (80 Cal.Rptr. 113, 458 P.2d 57)] we reaffirmed the necessity for such an inquiry and asked the additional question whether, considering defendant's activity, extension of jurisdiction over him would be 'fair.' " The acts of making notes executed elsewhere by a nonresident defendant payable to a California resident in California or the acts of making interstate telephone calls relative to the performance of a contract executed outside the state and performed outside the state do not invoke the benefits and protections of our laws.

Thus, in *Belmont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237], this court was confronted with determining whether a California drafting firm could obtain jurisdiction in California over a Pennsylvania corporation in a suit for recovery for drafting services which were performed by the California firm in California pursuant to a contract negotiated by mail through interstate channels but ultimately executed by the Pennsylvania corporation in Pennsylvania. The site of the job for which the services were performed was in Maryland. No representative of the Pennsylvania corporation came to California in connection with this particular job though it appears that on four or five occasions the corporation had sent representatives to California to discuss other jobs in progress, and on one occasion to negotiate for drafting services on another job. There were also interstate telephone conversations and similar contacts between the Pennsylvania firm and other drafting firms in California. We held the California court had no jurisdiction. In doing so, the court said:

" 'Minimum contact' for due process purposes requires more than a 'foot-fall' within the state . . . ." (31 Cal.App.3d at p. 286.)

"Viking contends that its similar contracts with petitioner in past years, as well as petitioner's contracts with other California drafting firms and the occasional acts of petitioner in sending employees to California to confer on the progress of a contract, elevate petitioner's relationship with California to a constitutionally permissible level for the exercise of jurisdiction. However, in evaluating petitioner's activities we must look to the nature and quality of the activity, rather than its quantity. [Citations.] Irrespective of the number of contracts, the substance of petitioner's activities within this state has been the same—the purchase of services from residents by contracts executed outside of the state. The occasional act of sending an employee into the state to expedite the services adds nothing to the relationship between petitioner and the state. [Citation.] We note that petitioner sent no representatives into California in connection with the contract giving rise to the present litigation." (31 Cal.App.3d at p. 288, fn. 4.) (See also *Cornell University Medical College* v. *Superior Court, supra,* 38 Cal.App.3d at p. 317; *Interdyne Co.* v. *SYS Computer Corp.* (1973) 31 Cal.App.3d 508, 511-512 [107 Cal.Rptr. 499].)

In *Belmont* there was more activity in this state than is involved in the case at bench, representatives having been sent here in connection with other contracts between the parties; but, just as was the case in *Belmont, supra,* the defendant sent no representatives to nor was he personally present in California in connection with the contracts or promissory notes giving rise to the present litigation.

While California always has some interest in providing a forum for its citizens, the issue is how great that interest is vis-a-vis the fairness to the defendant in compelling the defendant to litigate in this forum (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d at p. 619), and whether the litigation involves any public interest beyond the rights of the parties. (See *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d at p. 288.) No such independent public interest exists in the present case, which is in contrast to the strong interest present in *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, of regulating the sale by foreign companies in distant places of insurance policies to individual residents of this state, or the sale by foreign corporations of securities to California residents. (See *National Life of Florida Corp.* v. *Superior Court* (1971) 21 Cal.App.3d 281 [98 Cal.Rptr.

435].) ■ And where, as here, justification for the exercise of jurisdiction in a civil action over a defendant who resides in another state is not obvious, the convenience of the parties is a factor to be considered in determining whether it would be fair to exercise such jurisdiction as it has a bearing upon the abstractions of fairness, justice and reasonableness embodied within the due process concept. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 150-151 [127 Cal.Rptr. 352, 545 P.2d 264]; *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d at p. 289.)

■ In this regard, an affidavit filed on behalf of the defendant states: "That all of Defendant's records and the vast majority of the Defendant's witnesses which would show payments and/or off-sets, and/or counterclaims against the said notes are in Culiacan, Sinaloa, Mexico, and that the rest of Defendant's witnesses are in Nogales, Arizona." The contract was, of course, performed in Arizona and Mexico; and aside from plaintiff's records of the transaction which are presently stored in Fresno and could easily be taken to Arizona for trial, it would appear that the availability of physical evidence and witnesses in Arizona makes California an inconvenient forum for trial of the lawsuit. (See *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d at pp. 288-289.)

A further reason against the assumption of jurisdiction by California under the circumstances in the instant case is the adverse effect this may have on interstate commerce. To hold that a foreign individual who engaged in international and interstate commerce has subjected himself to the judicial jurisdiction of California by the mere act of agreeing to pay off promissory notes made payable in California and executed as evidence of moneys advanced by a California resident would hinder interstate business, contrary to the best economic interests of California. Grounding jurisdiction upon such a shadowy connection would cause borrowers from outside California to quickly seek alternative sources of funds rather than borrow money from this state's lenders and thereby subject themselves to the jurisdiction of this state. (See *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d at p. 289.) This is particularly true where, as here, the California source of financing is merely collateral to the primary profit-seeking venture of the parties which is conducted wholly outside of this state.

Though we have found no other California case discussing the jurisdiction of the California courts based upon the execution by a nonresident defendant in another state of a promissory note payable to a

California resident, the cases of *Wirth* v. *Prenyi, S.A.* (1968) 29 App.Div.2d 373 [288 N.Y.S.2d 377, 379] and *Fourth Northwestern Nat. Bank* v. *Hilson Industries, Inc.* (1962) 264 Minn. 110 [117 N.W.2d 732] are supportive of our conclusions herein.

The order is affirmed.

Gargano, J., and Franson, J., concurred.