Filed 7/26/23  Feast American Diners v. Lake Region Restaurants CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FEAST AMERICAN DINERS, LLC, | D082260 |
| Cross-complainant and Appellant, | |
| v. | (Super. Ct. No. MCC2002149) |
| LAKE REGION RESTAURANTS, LLC et al., | |
| Cross-defendants and Respondents. | |


APPEAL from order of the Superior Court of Riverside County, Raquel A. Marquez, Judge.  Affirmed.

Rosenstein & Associates, Robert B. Rosenstein and Daniel A. Thompson for Cross-complainant and Appellant.

Hahn & Hahn and Laura V. Farber for Cross-defendants and Respondents.

Lake Region Restaurants, LLC (Lake Regions), Glenn Beattie and Tina Beattie moved the superior court to quash a cross-complaint filed against them by Feast American Diners, LLC (Feast).  The trial court granted the

motion, reasoning that Feast had failed to establish that Lake Region and the Beatties had sufficient minimum contacts with California to establish personal jurisdiction over them. Feast appeals the trial court's ruling on the motion. As we explain, we agree with the trial court's conclusion and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Underlying Complaint and Cross-complaints*

The facts as set forth in this section are the facts as alleged in the pleadings. The action centers around a restaurant property in upstate New York. Over the past several decades, the ownership and the lease interests of the property had been transferred and reassigned multiple times. In 2015, Tarasa LLC, a California limited liability company, acquired ownership of the real property, and Feast, a Delaware corporation, took over the lease for the property. Pursuant to the lease, Feast operated a Denny's restaurant on the Tarasa property from 2015 to 2020.

In early 2020, the COVID-19 pandemic struck the United States, prompting New York Governor Andrew Cuomo to declare a state of emergency prohibiting all on-premises dining in the state. Soon thereafter, Feast purportedly closed down the Denny's restaurant and ceased rent payments to Tarasa. In late March 2020, Feast gave Tarasa a written notice purporting to terminate their lease, claiming "frustration of purpose," "legal impossibility," and "unforeseeable events" caused by the pandemic.

In April 2020, while Feast and Tarasa were communicating regarding these lease termination issues, Feast reached out to the Beatties to discuss whether they might be interested in a potential takeover of Feast's leasehold interest in the Tarasa restaurant property. The Beatties allegedly negotiated with Feast individually and as agents of Lake Region. The negotiations between Feast and the Lake Region ultimately broke down.

2

For its part, in June 2020, Tarasa sent Feast a notice of termination, accusing Feast of breach of contract and failure to cure the unpaid rent.

Tarasa subsequently leased the restaurant property to Lake Region.

On October 30, 2020, Tarasa filed a complaint in the Superior Court of California, County of Riverside, against Feast and other defendants (not relevant here) for breach of contract and declaratory relief.

Feast filed a cross-complaint and an amended cross-complaint. On September 3, 2021, Feast filed an unverified second amended cross-complaint (SACC). The SACC named Tarasa, Lake Region, and the Beatties as cross-defendants. The SACC asserts various claims against Tarasa, as well as separate claims against Lake Region and the Beatties (collectively, respondents) for intentional interference with contractual relations, fraud, and breach of contract.

In relevant part, the SACC alleges that the Beatties and Lake Region interfered with Feast's contractual relations with Tarasa by "engag[ing] in conduct that prevented or hindered [Feast]'s performance under [its] [l]ease [with Tarasa]." According to the SACC, the Beatties and Lake Region negotiated directly with Tarasa without Feast's "authoriz[ation]," causing Tarasa to "abruptly cease[ ]" its lease termination negotiations with Feast. The Beatties, acting individually and as agents of Lake Region, allegedly used "sensitive information" about Feast's "financial conditions" and "loans" to reach a new lease agreement with Tarasa "at a significant depressed rate, resulting in lower mitigation dollar amount to Tarasa and increased damages sought by Tarasa in its Complaint."

Feast further claimed the Beatties and Lake Region committed fraud by "conspir[ing]" with Tarasa to "deceive" Feast into believing they were engaging in "good faith lease assumption negotiations." After Feast "disclose[d] [its] sensitive information," the Beatties and Lake Region

3

"abruptly ceased" negotiations. Feast also claimed the Beatties and Lake Region breached "an oral and written agreement" not to disclose Feast's "sensitive information."

## II.

### *Motion to Quash Service of Summons*

In October 2021, Lake Region and the Beatties specially appeared in the cross-action on the SACC and moved to quash service of summons for lack of personal jurisdiction. The court continued the motion to allow the parties to conduct discovery into the jurisdiction question. After discovery was complete, the parties submitted the following evidence in support of their respective positions on the motion.

A. *Jurisdictional Evidence*

Public records show that Feast was incorporated in Delaware and is a registered company in California and New York. Lake Region was formed and registered as a New York company. The Beatties, who act as agents for Lake Region, declared that Lake Region operated its business solely in New York and "only sought to lease property" in New York. Lake Region never owned any property or operated in any state other than New York. Tarasa—a California limited liability corporation that is registered to do business in California and New York—is mainly controlled by Majid Mossadeghian, who lives in California.

The Beatties declared that they are married and have resided in Arizona for the past 20 years. Neither of them engaged in any personal business or owned any assets in California. Mrs. Beattie testified at her deposition that she managed Lake Region's properties in New York and negotiated with Tarasa and Feast on Lake Region's behalf concerning the restaurant property.

4

Around April 14, 2020, while Feast and Tarasa were engaged in their dispute about the Denny's lease, Ben Eramya, a Feast representative who lived in California, called Mr. Beattie to inquire if the Beatties would be interested in purchasing leasehold interests in Feast's New York restaurants. Eramya's April 2020 emails to Mr. Beattie listed Eramya's California business address in the signature line. Mr. Beattie stated Feast asked him for a proposed lease assumption agreement. On April 19, the general counsel to Lake Region drafted a proposed agreement containing terms by which Lake Region would assume a package of 10 leases, including the lease of the Denny's restaurant property, from Feast. The proposed agreement listed an address for Feast in California. Neither Mr. Beattie nor Mrs. Beattie was named as a party in their personal capacity to the proposed agreement. The proposed agreement did not contain a choice of law or forum selection clause subjecting the parties to California law or California as a forum.

On April 20, Mr. Beattie emailed Eramya the proposed agreement for Lake Region to assume the New York lease. Lake Region and Feast then negotiated through their attorneys until April 29, when their negotiations ultimately broke down and terminated.

As between Lake Region and Tarasa, Mossadeghian testified he called Mrs. Beattie from California to inquire about Lake Region leasing the New York restaurant property directly from Tarasa. Between May and June 2020, attorneys for Lake Region and Tarasa negotiated the terms of the lease. On June 30, Mr. Beattie signed an agreement in Arizona on Lake Region's behalf to lease the restaurant property from Tarasa. The Beatties were not parties to the lease. The lease contained a choice-of-law provision subjecting it to New York law. It required Lake Region to send rent payments to Tarasa's California address. The Beatties declared that the restaurant property's

5

inspection and maintenance services took place in New York and the vendors of the restaurant were located in New York.

B.    *Parties' Arguments and Trial Court's Ruling*

Lake Region and the Beatties contend they did not "purposefully avail" themselves of the privilege of conducting activities within California, Feast's cross-claims did not "arise out of" their California contacts, and California's exercise of jurisdiction would not be fair to them.  In opposition, Feast argued that Lake Region and the Beatties "have sufficient minimum contacts with California to support the exercise of jurisdiction."

In July 2022, the court granted Lake Region and the Beatties' motion to quash, reasoning:

> "Although Lake Region's lease with Tarasa requires lease payments be made in California, along with a few phone calls and emails, the contacts were not 'substantial, continuous and systematic.'  The lease was entered in New York, for New York property, where all services and maintenance related to the New York business were performed in New York.  Feast's newly discovered facts merely establish that Lake Region and Tarasa negotiated the lease through interstate communications, with Tarasa, which entity was in California, and that the individual Cross-Defendants had sporadic communications with other California residents that seem to be unrelated to this case.  Feast has not established minimum contacts with California to support this Court's jurisdiction over Cross-Defendants, including the individual Beattie Cross-Defendants.  None of the cross[-]claims arose out of Cross-Defendants' activities relating to California. . . ."

Feast appealed.

## DISCUSSION

Feast contends that California has both general and specific personal jurisdiction over Lake Region and the Beatties based on its breach of contract and tort cross-claims against them, because (1) Feast and Tarasa are

6

registered businesses in California; (2) representatives of Feast and Tarasa, with whom the Beatties communicated about the restaurant property, were located in California; (3) Lake Region is required to send rent payments to Tarasa's California address under the June 30, 2020 lease; and (4) Feast, a California company, allegedly suffered injuries as a result of Lake Region's and the Beatties' contacts.

## I.

### *Standard of Review*

When, as here, a defendant moves to quash service of process on jurisdictional grounds, the plaintiff "must do more than merely allege jurisdictional facts." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110 (*In re Automobile*).) The plaintiff bears the initial burden of proving, by a preponderance of the evidence, the facts justifying the exercise of jurisdiction. (*Ibid.*) It "must provide affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts." (*Ibid.*) If this is met, the burden is shifted to the cross-defendant to demonstrate the exercise of jurisdiction would be unreasonable. (*Id.* at pp. 110–111.)

When there is conflicting evidence, we review the trial court's factual determinations under the substantial evidence standard (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*)) and resolve all conflicts "against the appellant and in support of the order." (*Wolfe v. City of Alexandria* (1990) 217 Cal.App.3d 541, 546.) This "standard of review applies to both express and implied findings of fact made by the court in its statement of decision." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.)

When the evidence does not conflict, the question of jurisdiction is one of law, which we review de novo. (*Vons, supra*, 14 Cal.4th at p. 449.)

7

*Trial Court's Finding of Facts*

In granting the motion to quash, the trial court expressly found the following facts:

a.  Lake Region's lease with Tarasa required that lease payments be made in California.

b.  The lease was entered in New York, for New York property.

c.  All services and maintenance related to the New York business were performed in New York.

d.  Lake Region and Tarasa negotiated the lease through interstate communications.

e.  Tarasa was a California entity.

f.  Lake Region and the Beatties had sporadic communications with other California residents that seem to be unrelated to this case.

g.  None of Feast's claims arose out of the activities of Lake Region or the Beatties relating to California.

Feast asserts that the findings of the trial court are not in dispute. Respondents contend that the trial court resolved certain factual disputes, and that those findings were supported by substantial evidence, including the following facts:

a.  Contrary to Feast's allegations, Lake Region did not negotiate, enter into or perform its obligations in California.  Respondents contend that the court resolved this dispute by finding that although interstate communications were used to negotiate the lease, nonetheless the lease was entered into in New York, for New York property, with all services and maintenance for the business to be performed in New York.

b.  Contrary to Feast's allegations, the Beatties did not act on an individual basis in its dealings with Tarasa or Feast.  Respondents contend

that the court resolved this dispute by finding insufficient minimum contacts to establish personal jurisdiction over the Beatties.

Because Feast does not dispute the trial court's findings, we now consider *de novo* the jurisdictional issues presented on appeal.

## III.

### *General Jurisdiction Principles*

California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant "comports with requirements of the due process clause of the federal Constitution 'if the defendant has such *minimum contacts* with the state that the assertion of jurisdiction does not violate' "traditional notions of fair play and substantial justice." ' " (*Vons*, *supra*, 14 Cal.4th at p. 444, italics added.) "Depending upon the extent of a nonresident defendant's contacts with the forum state, the defendant may be subject either to *general* jurisdiction, or to *specific* jurisdiction." (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1314 (*Elkman*).)

## IV.

### *Feast Fails to Establish California Has General Jurisdiction*

If the nonresident defendant's contacts in the forum state are " 'substantial, continuous, and systematic,' " the defendant may be subject to California's general jurisdiction. (*Vons*, *supra*, 14 Cal.4th at p. 445.) Thus, the trial court properly considered the connection between Lake Region and the Beatties with California. "In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' " (*Ibid.*)

"[T]he general jurisdiction analysis [for a corporation] turns on the nature of the defendant's continuous corporate *operations* within a state."

9

(*Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222–223.) "The 'standard for establishing general jurisdiction is "fairly high,' [citation] and requires that the defendant's contacts be of the sort that approximate physical presence. [Citation.] Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.'" (*Elkman*, *supra*, 173 Cal.App.4th at p. 1315, italics omitted.)

The evidence before the trial court supports its conclusion that Lake Region's and the Beatties' contacts in California were not substantial, continuous, and systematic. The Beatties attested neither they nor Lake Region had any businesses in California. Lake Region was not registered to do business in California. Lake Region, through the Beatties, merely negotiated with parties that had a connection to California, namely Feast (a Delaware Corporation, registered to do business in New York and California, with an agent who worked out of California) and Tarasa (a California Limited Liability Corporation). It is well-established that "in order to confer general jurisdiction a defendant must have a business presence in [the forum state]. [Citation.] It is not enough that a corporation do business with [the forum state]." (*Johnston v. Multidata Sys. Int'l Corp.* (5th Cir. 2008) 523 F.3d 602, 611; accord *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.* (9th Cir. 2000) 223 F.3d 1082, 1086.) Feast presented no evidence to show either the Beatties or Lake Region has any business presence in California. Indeed, courts have rejected assertions of general jurisdiction based on connections to the forum states far more substantial than here. (See, e.g., *Helicopteros Nacionales De Colombia v. Hall* (1984) 466 U.S. 408 [holding Texas had no general jurisdiction over a corporation that purchased over $4 million worth of helicopters, 80 percent of its fleet, between 1970 and 1977 from a Texas

10

company]; *Bird v. Parsons* (6th Cir. 2002) 289 F.3d 865, 873–874 [the fact that defendant had done business with 4,666 Ohio residents through its website did not show that Ohio had general jurisdiction]; *Revell v. Lidov* (5th Cir. 2002) 317 F.3d 467, 471 [no general jurisdiction over nonresident periodical that never obtained more than 20 internet subscriptions from the forum state's residents].)

We therefore conclude that Feast has failed to establish the Beatties' and Lake Region's contacts with California were "the sort that approximate physical presence" in California. (*Elkman, supra,* 173 Cal.App.4th at p. 1315.) Accordingly, neither Lake Region nor the Beatties are subject to California's general jurisdiction.

## V.

### *Feast Fails to Establish California Has Specific Jurisdiction*

If there is no general jurisdiction, California may still exercise specific jurisdiction over a nonresident defendant if: (1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.) In examining the quality and nature of the activities in this state, the focus of the purposeful availment inquiry is on the nonresident defendant's "intentionality" and "activities toward" California—not the plaintiff—such that " 'he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; *Floyd J. Harkness Co. v. Amezcua* (1976) 60 Cal.App.3d 687, 691.)

11

Because the analysis of specific jurisdiction here differs depending on whether it pertains to a contract or tort claim, we consider the issues separately.

A. *California Has No Specific Jurisdiction Based on Feast's Breach-of-Contract Claim*

The unverified SACC alleges that during their negotiations with Tarasa, the Beatties and Lake Region breached an "oral and written" non-disclosure agreement (NDA) that they had entered into with Feast. However, nowhere in the lengthy evidentiary submission to the trial court was there any evidence regarding any such alleged NDA. Further, Feast made no argument before the trial court regarding any such NDA. The record before the trial court (and before us) is utterly devoid of a single fact about California's connection with the alleged NDA. There are no facts in the record regarding the location of any negotiations between the parties concerning any NDA, the alleged terms of such agreement, or when, where or how the respondents may have breached such agreement.[1] We do not consider the unverified allegations in the SACC. (*Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1760 [an unverified complaint has "no evidentiary value" when considering jurisdictional facts].)

---

[1] The briefing before this court similarly omits discussion of the purported breach of the alleged NDA. Feast's opening brief only obliquely refers to the analysis "of minimum contacts in a contract case," which may be a reference to its breach of contract claim against respondents. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them."].) Giving appellants the benefit of the doubt, we refrain from concluding that they have abandoned this argument on appeal. (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 360 [failure to support a point with "reasoned argument and citations to authority" may be treated as waived].)

12

Where a contract is alleged to form the basis for a state's exercise of specific jurisdiction against an out-of-state defendant who has not consented to suit in the state, it must be shown that the defendant has purposefully directed its activities at residents of that state, and the litigation must result from injuries that arise out of or relate to the defendant's activities. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 (*Burger King*).) "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Hanson v. Denckla* (1958) 357 U.S. 235, 253.) It need not be shown that a defendant was physically present in the state, see *Burger King*, *supra*, 471 U.S. at p. 476; but "[a] contract with an out-of-state party does not automatically establish purposeful availment in the other party's home forum." (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 907.)

Thus, we look to see whether Lake Region or the Beatties directed their activities at California residents, and whether damages from their alleged breach of an NDA relate to any such activities.

Here, the record shows no activity of any kind directed toward California residents in connection with the alleged NDA between Feast and Lake Region. At most, fairly read, the SACC alleges that the NDA related to a possible assumption of the Denny's lease in New York by Lake Region or the Beatties. But that discussion was initiated by Feast, not by the respondents. The fact that Lake Region and the Beatties "did not solicit business in California strongly supports the view that personal jurisdiction was lacking." (*Malone, supra,* 84 Cal.App.4th at p. 1440.)

13

On appeal, Feast asks that in assessing minimum contacts, we consider the separate negotiations and lease agreement between Lake Region, the Beatties, and Tarasa. Feast does not explain how negotiations between different parties for different agreements are relevant under *Burger King*, or how a lease agreement with one party has anything to do with an NDA with a different party, or how those different agreements can establish the purposeful availment element. But even assuming that these factors are relevant or related, we conclude that the court correctly granted the motion to quash as to the cause of action alleging breach of the NDA.

The lease agreement between Tarasa and Lake Region for the lease of New York real property was signed by Mr. Beattie on Lake Region's behalf in Arizona. The maintenance and inspection services of the restaurant property underlying the lease would occur in New York. Lake Region relied on local vendors in New York to operate the restaurant. It also contained a choice-of-law clause subjecting the parties to New York Law. (See *T.A.W. Performance, LLC v. Brembo, S.p.A.* (2020) 53 Cal.App.5th 632, 646 [holding a choice-of-law clause is relevant to determine whether there was purposeful availment].) The fact that the Beatties or Lake Region "negotiated the lease through interstate communications," as found by the trial court, does not constitute purposeful direction of its activities toward California residents or purposeful availment of any privilege of conducting activities within California.

Further, there is no evidence that Lake Region or the Beatties did anything in California that caused Feast to suffer injuries from an alleged breach of the NDA.

Thus, Feast has failed to meet its burden to establish facts that would support California's exercise of specific jurisdiction over Lake Region or the

Beatties as to its breach of contract claim.  (See *In re Automobile*, *supra*, 135 Cal.App.4th at p. 110.)

B.    *California Has No Specific Jurisdiction Based on Feast's Tort Claims*

Where a claim sounds in tort, we employ the "effects" test derived from *Calder v. Jones* (1984) 465 U.S. 783 (*Calder*).  " 'Under *Calder*, personal jurisdiction can be based upon:  "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." ' " (*Jewish Def. Org. v. Superior Court* (1999) 72 Cal.App.4th 1045, 1057.)  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in *a meaningful way*." (*Walden v. Fiore* (2014) 571 U.S. 277, 290, italics added.)

The gravamen of Feast's tort claims against Lake Region and the Beatties (fraud and intentional interference with contract) is that during respondents' lease negotiations with Feast, they obtained sensitive information about Feast, and then they used that information about Feast to benefit themselves in their negotiations with Tarasa for the same lease, to Feast's detriment.  Thus, we must consider what intentional actions were "expressly aimed" at California and whether Feast suffered harm in California through respondents' meaningful connections to California.

It is undisputed that Feast initially reached out to Mr. Beattie to explore the possibility of taking over the restaurant property in New York. Lake Region and the Beatties neither sought nor engaged in any business in California.  Although Feast is incorporated in Delaware and registered to do business in New York and California, and although Feast's agent Eramya communicated with the Beatties about the New York lease from his location in California, the object of the negotiations was the New York restaurant

15

property. Respondents did not take any actions that were "expressly aimed" at California. The brunt of any injuries Feast allegedly suffered from intentional interference of contractual relations and fraud would arise from the lease underlying the restaurant in New York—*not* California.

Further, there is no evidence in the record about whether, when, where or how the respondents used or conveyed sensitive information about Feast to Tarasa, the California-based property owner, in support of the torts alleged in the SACC.

Feast insists that the Beatties' and Lake Region's intentional torts "caused injurious 'effects' inside California" and that "is enough to establish a substantial connection for the purpose of minimum contacts." But "mere injury to a forum resident is not a sufficient connection to the forum." (*Walden, supra,* 571 U.S. at p. 290.) Accordingly, we conclude Feast has failed to meet its burden of establishing California has personal jurisdiction over Lake Region and the Beatties as to Feast's tort claims against them.[2]

---

[2] Given that Feast has failed to establish minimum contacts with California, we need not decide whether it would be unfair or unreasonable to compel Lake Region and the Beatties to submit to a California court. (See *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 226 ["If the plaintiff is unable to demonstrate sufficient minimum contacts with the forum to justify jurisdiction, a court is not required to engage in the process of weighing the defendant's inconvenience of litigating in the forum against the plaintiff's interests in suing locally and California's interest in assuming jurisdiction."].)

## DISPOSITION

The court's order granting the motion to quash is affirmed.  The Beatties and Lake Region shall recover costs on appeal.

KELETY, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.