Filed 8/15/23  Whispering Oaks Residential Care Facility v. Killingsworth CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WHISPERING OAKS RESIDENTIAL CARE FACILITY LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ROBERT KILLINGSWORTH, <br><br> Defendant and Respondent. | H050479 <br> (Santa Clara County <br> Super. Ct. No. 18CV336673) |

This case arises out of a property damage insurance claim for a 2010 Missouri incident that has resulted in several lawsuits in Missouri and California.  Defendant Robert Killingsworth, the insurer's Missouri claims adjuster, moved to quash service of summons for lack of personal jurisdiction in this California action, and the trial court granted the motion.  Finding no error, we affirm.

## I.     BACKGROUND

In August 2013, plaintiffs Whispering Oaks Residential Care Facility LLC, Whispering Oaks RCF Management Co Inc., and Naren Chaganti filed a lawsuit in Missouri against Cricket Communications, Inc. arising out of a 2010 incident in which plaintiffs claim a frozen water pipe caused loss to their property and business.  Cricket had previously entered into a commercial lease agreement with Whispering Oaks Health

Care Center, Inc., a business in Wildwood, Missouri, which agreement provided for Cricket to use in its telecommunication network a water tank on the premises.[1]

Plaintiffs allege that, as required by the lease, Cricket obtained commercial general liability insurance in an aggregate amount of $1 million from Travelers Insurance Casualty Insurance Company of America (Travelers). Plaintiffs allege further that the lease provides that it is to be interpreted under the laws of Missouri; the insurable interest under both the lease and the insurance policy is in Missouri; and Missouri law applies to the substantive aspects of plaintiffs' lawsuit.

Plaintiffs made a claim to Cricket based on the frozen water pipe incident and were referred to Travelers. Plaintiffs allege that Travelers, Killingsworth, and Joseph Tancredy, another claims adjuster who worked for Travelers in California, "failed to follow one or more Missouri statutory and regulatory provisions regarding claims processing practices."

The Missouri lawsuit was dismissed without prejudice in December 2014. Plaintiffs filed another lawsuit against Cricket in California in November 2015 for the alleged "failure to provide a [commercial general liability] policy as required under the lease." Judgment was issued against plaintiffs in that lawsuit in December 2018. Plaintiffs filed the instant California lawsuit in 2018 against Travelers, Killingsworth, and Tancredy.[2] Here, they allege that in the 2015 California action, they discovered that

---

[1] Whispering Oaks Residential Care Facility LLC and Whispering Oaks RCF Management Co Inc. later became successors-in-interest to the lease by way of assignment. Naren Chaganti is the sole owner, member, officer, and shareholder of those two entities.

[2] We observe that plaintiffs filed another separate lawsuit in Santa Clara County Superior Court in 2020 against a different insurance company—Cincinnati Insurance Company—for refusal to pay following the 2010 damage under a policy that covered plaintiffs' business property in Missouri. The trial court in that case granted the Ohio-based insurance company's motion to quash and a different panel of this Court affirmed

2

Cricket had in fact obtained a policy that covered the claims in the original Missouri lawsuit.

Killingsworth, a resident of Missouri, was an insurance claims adjuster for Travelers and worked on the claim related to the incident with the pipe. Plaintiffs allege Travelers, Killingsworth, and Tancredy failed to follow Missouri law and made false statements and/or concealed material facts regarding the existence of an insurance policy and whether plaintiffs were insured under that policy or under Cricket's coverage. Plaintiffs relied on representations by Travelers and Killingsworth that plaintiffs were not insured under any policy connected to the lease. Plaintiffs allege further that Killingsworth conspired with Travelers, Tancredy, and Cricket managers to prevent plaintiffs from obtaining the benefits of the policy.

On November 14, 2019, Travelers removed the case to federal court. The federal court granted a motion by plaintiffs to remand the case to the superior court on May 14, 2020, but the remand order was not received by the trial court until March 2, 2022.

Plaintiffs served the original complaint on Killingsworth on December 30, 2020, before the trial court received the remand order. Plaintiffs filed a first amended complaint on November 15, 2021. The record does not reflect that plaintiffs ever served the first amended complaint on Killingsworth.

On December 23, 2021, Travelers demurred to plaintiffs' first amended complaint. Plaintiffs did not file an opposition. Instead, based on Travelers' filing of its demurrer prior to remand, as well as plaintiffs' asserted non-receipt of "a working link to the demurrer papers," plaintiffs and Travelers entered into a stipulation withdrawing the demurrer and allowing plaintiffs to file a second amended complaint. The trial court

---

the order in *Whispering Oaks RCF Management Co. Inc, et al. v. Cincinnati Insurance Company* (Mar. 13, 2023, H049906) [nonpub. opn.].

3

entered an order in accordance with the stipulation but later rescinded the order after granting a peremptory challenge by plaintiffs. Travelers therefore re-noticed its demurrer to the first amended complaint.

Killingsworth moved to quash service of summons. On September 9, 2022, the trial court granted the motion.

Plaintiffs timely appealed.

## II. DISCUSSION

### A. *Legal Principles and Standard of Review*

"California courts may exercise personal jurisdiction on any basis consistent with the Constitutions of California and the United States." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*); Code Civ. Proc.; § 410.10.[3]) "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' [Citations.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*); *Ford Motor Company v. Montana Eighth Judicial District Court* (2021) __ U.S. __ [141 S.Ct. 1017, 1024].)

"Personal jurisdiction may be either general or specific." (*Vons*, *supra*, 14 Cal.4th at p. 445.) Plaintiffs concede Killingsworth is not subject to general jurisdiction and we agree that general jurisdiction does not apply. (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 137 [" 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile' "].) We therefore consider only whether Killingsworth is subject to this California lawsuit based on specific jurisdiction.

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

4

There are three requirements for the exercise of specific jurisdiction: "(1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citation]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citations]." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) Subjecting a defendant to specific jurisdiction is considered fair "because their forum activities should put them on notice that they will be subject to litigation in the forum." (*Vons*, *supra*, 14 Cal.4th at p. 446.) Specific jurisdiction is based on the understanding that a defendant who purposefully and voluntarily directs his or her activities toward a forum receives a benefit and therefore should not be surprised that he or she can be sued in that forum. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

The California Supreme Court has described the standard of review for a motion to quash as follows: "When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons*, *supra*, 14 Cal.4th at p. 449.)

**B.    *Procedural Issues***

**1.    *Timing of Motion to Quash***

Plaintiffs argue that Killingsworth filed his motion to quash too late and that he waived any objection to personal jurisdiction by failing to schedule the hearing on the motion within 30 days of the date on which the motion was filed.

5

As a general rule, a defendant may challenge a court's personal jurisdiction by serving and filing a motion to quash service of summons "on or before the last day of [the defendant's] time to plead or within any further time that the court may for good cause allow . . . ." (§ 418.10, subd. (a)(1).)  But "[w]here the defendant has removed a civil action to federal court without filing a response in the original court and the case is later remanded for improper removal, the time to respond shall be as follows:  [¶] (1) If the defendant has not generally appeared in either the original or federal court, then 30 days from the day the original court receives the case on remand . . .  to move to quash service of summons . . . ." (§ 430.90, subd. (a)(1).)

As stated in the trial court's order and acknowledged by plaintiffs in their opening brief on appeal, remand from the federal court was complete on March 2, 2022. Killingsworth originally filed his motion to quash on June 14, 2022, more than 30 days later.

Killingsworth asserts that he was never served with the operative first amended complaint and nothing in the record demonstrates this to be false.[4]  As the parties seeking to establish jurisdiction, plaintiffs had the burden to show when they properly served Killingsworth with the complaint, without which he would have no obligation to respond within 30 days or any other time period.  (See *Kaiser Aetna v. Deal* (1978) 86 Cal.App.3d 896, 904 [The burden of proof is on the plaintiffs "to establish the fact of jurisdiction by a preponderance of the evidence"]; see also *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387 ["[T]he plaintiff has 'the burden of proving the facts that did give the court jurisdiction, that is the facts requisite to an effective service.' "].) In other words, plaintiffs bore the burden of establishing the proper service of the first amended complaint and, as a result, the untimeliness of the motion to quash in response.

---

[4] Proof of service of the complaint "must be filed with the court within 60 days after the filing of the complaint."  (Cal. Rules of Court, rule 3.110(b).)

On this record, we find no fault with the trial court's determination that plaintiffs failed to establish a predicate fact essential to both personal jurisdiction and the asserted untimeliness of the motion to quash—that plaintiffs had served Killingsworth with the first amended complaint.  (*Hauser v. Ventura County Bd. of Supervisors* (2018) 20 Cal.App.5th 572, 576 ["The determination that a party has failed to carry her burden of proof is, by its very nature, not required to be supported by substantial evidence, or any evidence at all.  It is the lack of evidence of sufficient weight and credibility to convince the trier of fact that results in such a determination."].)  Further, even if Killingsworth had filed the motion late, section 418.10 authorizes a trial court to allow a motion to quash to be filed later for good cause.  Under these circumstances, the trial court was within its discretion in finding the existence of such good cause based on the court's conclusion that none of the delays in the case could be blamed on Killingsworth.

We also reject plaintiffs' argument that failure to schedule the hearing within 30 days results in waiver of an objection.  " '[S]cheduling a hearing date *beyond* 30 days should not invalidate a motion to quash.  Nothing in [section] 418.10 suggests the court must overlook the lack of personal jurisdiction or proper service because of a defendant's failure to schedule a hearing date within 30 days.' "  (*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1296; see also *Preciado v. Freightliner Custom Chassis Corporation* (2023) 87 Cal.App.5th 964, 969, fn. 4 (*Preciado*) [rejecting contention that motion to quash scheduled for hearing 99 days after filing of motion must be denied].)

### 2.      *Waiver of Jurisdiction Through General Appearance*

Plaintiffs contend Killingsworth made a general appearance by purportedly joining in Travelers' stipulation with plaintiffs and therefore waived any challenge to personal jurisdiction.[5]  Whether a stipulation constitutes a general appearance depends on the

---

[5] Plaintiffs also argue in their reply brief on appeal that seeking dismissal with prejudice—as Killingsworth did in moving to quash—constitutes a general appearance. For this proposition, plaintiffs rely on *Greener v. Workers' Comp. Appeals Bd.* (1993) 6

nature of the stipulation and its surrounding circumstances.  For example, "[a] written stipulation between attorneys recognizing jurisdiction of the court over the parties constitutes a general appearance by defendant." (*General Ins. Co. v. Superior Court* (1975) 15 Cal.3d 449, 453, italics omitted.)  But "[a] party who merely seeks an extension of time to plead cannot reasonably be deemed to make a general appearance.  His purpose may be to obtain adequate time to determine whether or not to object to the jurisdiction of the court." (*Busching v. Superior Court* (1974) 12 Cal.3d 44, 51 (*Busching*); see also *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431, 435, fn. 9 ["[a] stipulation extending time in which to plead is not a general appearance."]

We independently review the trial court's interpretation of a stipulation, "including the resolution of any ambiguity, unless the interpretation depends on the trial court's resolution of factual questions concerning the credibility of extrinsic evidence." (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694.)  Because the court's ruling "did not turn on the credibility of extrinsic evidence, . . . our review of the court's interpretation of the stipulation is de novo." (*Ibid*.)

The only reference to Killingsworth in the stipulation is as an employee of Travelers.  It is in a paragraph that states that "Travelers and Travelers' employees (defendants Joseph Tancredy and Robert Killingsworth) need not and shall not answer, demur, or otherwise respond to the original Complaint or the First Amended Complaint, but instead shall respond to the Second Amended Complaint within the normal timeframe after being served."  Even if we assume for purposes of appeal that this language is

---

Cal.4th 1028, 1037, where the California Supreme Court stated that, "[n]otwithstanding a 'special appearance' designation on a motion to quash, if the movant seeks relief on any basis *other than* lack of personal jurisdiction, he or she makes a general appearance." (Italics added.)  Although Killingsworth stated in the conclusion of his motion to quash that the court should dismiss him from the case with prejudice, he did so only on the ground that "[t]he Court lacks personal jurisdiction over [him]."  His statement regarding dismissal does not transform his motion to quash into a general appearance.

8

sufficient to make Killingsworth a party to the stipulation, the stipulation would not constitute a general appearance.

The stipulation for "Travelers and Travelers' employees (defendants Joseph Tancredy and Robert Killingsworth)" to "respond to the Second Amended Complaint" is essentially an agreement for an extension of time, allowing Killingsworth to wait until service of the second amended complaint before deciding how to respond. The stipulation did not state that Killingsworth would "appear," only that he would "respond." In this context, the word "respond" is similar in meaning to "plead." (See *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 834 [referring to a party's failure to file a "responsive pleading" to the complaint].)

In *Owen v. Niagara Machine & Tool Works* (1977) 68 Cal.App.3d 566, 569 (*Owen*), the court distinguished between language in a stipulation that "merely granted time to 'plead,' not to 'appear[,]' " stating that "[t]he difference is material." Citing *Busching*, *supra*, 12 Cal.3d 44, the court stated that "[w]hatever plaintiff's counsel may have thought that defendant's counsel intended ultimately to do, he had no basis, on an agreement merely to 'plead' to assume that defendant desired or intended anything more than time to determine on a course of action." (*Owen*, *supra*, 68 Cal.App.3d at pp. 569-570, fn. omitted; see also *Tires Unlimited v. Superior Court* (1986) 180 Cal.App.3d 974, 982 [noting the California Supreme Court's conclusion that "a stipulation extending time to plead or otherwise respond to a complaint cannot be considered a general appearance since defendant may be simply seeking time for determining whether to object to the court's jurisdiction"].) A stipulation to extend time for Killingsworth to respond does not constitute a general appearance by Killingsworth. (*Busching*, *supra*, 12 Cal.3d at p. 51.)

C. *Specific Jurisdiction*

To overcome the motion to quash, plaintiffs must first present evidence showing minimum contacts with California. (*Vons*, *supra*, 14 Cal.4th at p. 449.) The evidence

9

must demonstrate that Killingsworth "purposefully availed himself of the privilege of conducting activities within California, thus invoking the benefits and protections of its laws." (*Floyd J. Harkness Co. v. Amezcua* (1976) 60 Cal.App.3d 687, 692 (*Harkness*).) And, to be clear, "[i]n examining the quality and nature of the activities in this state, it is settled that we are . . . concerned . . . exclusively with the nonresident defendant's activities in this state." (*Id*. at p. 691.)

The only evidence plaintiffs present is a declaration in which Chaganti avers:

(1)     On December 30, 2010, Killingsworth wrote a letter to Chaganti from "Travelers' Kansas office";[6]

(2)     In December 2011, Chaganti had several e-mail communications with Killingsworth;

(3)     Killingsworth copied all his communications to two Cricket employees who Chaganti believes to be the security officer and in-house attorney for Cricket, working in Cricket's corporate headquarters in San Diego;[7]

(4)     These Cricket employees, in collaboration with Killingsworth, terminated the Cricket lease at plaintiffs' property;

---

[6] It is not apparent from the declaration whether the reference to "Kansas" is to the State of Kansas or to Kansas City, MO.

[7] Following oral argument in this appeal, plaintiffs moved to augment the record with a two-page privilege log from Travelers that purportedly confirms the contacts with these employees. We deny the motion and plaintiffs' alternative request for judicial notice of the log, because the log was not before the trial court when it ruled on the motion to quash. (*In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209.) Moreover, even if we were to consider the privilege log, these contacts have no impact on the outcome of this appeal, as we explain in our discussion of purposeful availment, *post*.

10

(5)　　An employee at Travelers' Walnut Creek office obtained all of Killingsworth's

notes and files and communicated with Killingsworth to get up to speed with the

facts of the case.[8]

Killingsworth filed his own declaration in which he stated that he resides and

works in Missouri and has never resided in or done business in California.  He stated that

he was the claims adjuster that handled plaintiffs' Missouri lawsuit pursuant to a

Travelers commercial general liability policy that insured Cricket but "was not the claims

adjuster for the California suit" filed in November 2015.[9]  He stated that all of his

contacts with plaintiffs were in his "capacity as a Missouri adjuster, responding to

plaintiffs' first suit filed against a Travelers' insured concerning an alleged frozen pipe on

the premises of plaintiffs' Missouri businesses."

Killingsworth's communications with Chaganti outside of California do not

constitute contacts with California.  Likewise, communications from a Travelers

employee in California to Killingsworth do not demonstrate purposeful availment by

Killingsworth.  (See *Harkness*, *supra*, 60 Cal.App.3d at p. 691.)  The only possible

California contacts originating from Killingsworth are the communications on which

Killingsworth "copied" two employees of Cricket purportedly located in San Diego.[10]

There is no evidence in Chaganti's declaration that the communications were directed to

---

[8] Plaintiffs also attach as Exhibit A to the Chaganti Declaration the cover sheet for an insurance policy issued by Travelers to Leap Wireless International.  Chaganti states that this was the cover page for the Cricket policy about which Killingsworth communicated with plaintiffs and Cricket in California.  The existence of the policy does not show any contacts from Killingsworth to California related to the claims in plaintiffs' lawsuit.

[9] We understand Killingsworth's statement to mean that he had no involvement with the California case.

[10] Plaintiffs state in their opening brief that the communications were e-mail messages.

11

those employees for any specific purpose other than to keep them informed of Killingsworth's conduct in Missouri as the claims adjuster for plaintiffs' Missouri claim. Even if Killingsworth contacted the California employees to talk to them directly about the Missouri claim, the happenstance of those employees' physical location would not suffice as evidence that Killingsworth "purposefully availed himself of the privilege of conducting activities within California, thus invoking the benefits and protections of its laws[.]" (*Harkness*, *supra*, 60 Cal.App.3d at p. 692.) Potential defendants will be subject to personal jurisdiction in a state only if they have clear notice that they will be subject to suit there because their activities were purposefully directed at residents of the forum and created a substantial connection with the forum. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1063.) A defendant " 'will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . .' " (*Ibid.*) "[T]he acts of making interstate telephone calls relative to the performance of a contract executed outside the state and performed outside the state does not invoke the benefits and protections of our laws." (*Harkness*, *supra*, 60 Cal.App.3d at p. 692.) As plaintiffs themselves allege, the lease at the center of the dispute provides that it is to be interpreted under the laws of Missouri; the insurable interest under both the lease and the insurance policy is in Missouri; and Missouri law applies to the substantive aspects of plaintiffs' lawsuit.

Even if we were to conclude that simply copying individuals in another state on e-mail communications were sufficient to constitute "purposeful availment" in that state, an individual is only subject to specific jurisdiction if "the 'controversy is related to or "arises out of" a defendant's contacts with the forum.' " (*Vons*, *supra*, 14 Cal.4th at p. 446.) The controversy here arises out of property and business loss in Missouri and plaintiffs' insurance claim in Missouri. Killingsworth's handling of the Missouri claim does not subject him to suit in California. Likewise, to the extent plaintiffs rely on the termination of the Cricket lease, plaintiffs' allegations in the first amended complaint

12

make clear their dispute arises out of the frozen pipe incident, not the termination of the lease. Therefore, any contention of Killingsworth's involvement in terminating the lease is not relevant to a determination of whether he purposefully availed himself of the benefits of California.

As a final matter, we conclude that plaintiffs forfeited their theory that Killingsworth caused an "effect" in California (i.e., a loss to plaintiffs) by not telling plaintiffs that they were additional insureds under the Cricket policy, having failed to raise it in the trial court. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676; see also *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698.)

Even if we considered plaintiffs' "effects test" argument on the merits, we would reject it. Although personal jurisdiction over defendants may arise from the effects of their out-of-state conduct in the forum state (*Calder v. Jones* (1984) 465 U.S. 783, 789 (*Calder*)), "virtually every jurisdiction has held that the *Calder* effects test requires intentional conduct *expressly aimed at or targeting* the forum state in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum." (*Pavlovich*, *supra*, 29 Cal.4th at p. 271, fn. omitted.) Beyond the absence of evidence that Killingsworth intentionally directed any conduct towards California, the record reflects no evidence that plaintiffs suffered any damage in California. Chaganti's declaration in fact focuses on the "terminat[ion of] the Cricket lease at our [Missouri] property, causing damage in the form of lost rent."

D.      *Jurisdictional Discovery*

Plaintiffs contend the trial court erred in denying their request to conduct jurisdictional discovery. Generally, "[a] plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127.) But "[i]n order to prevail on a motion for

13

a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Ibid*.) We will not reverse a trial court's ruling on such a motion absent "a manifest abuse of . . . discretion." (*Ibid*.)

In their opposition to the motion to quash, plaintiffs requested the opportunity "to conduct jurisdictional discovery limited to Killingsworth's case-specific California contacts," based only on their stated belief that Killingsworth had "many phone conversations with his customer Cricket in San Diego as to transfer of investigative documents, instructions and strategy sessions on how to deny the claim." Given that the claims in the case arise out of the incident in Missouri, where Killingsworth lives and works, the trial court acted within its discretion in finding no likelihood that "any discovery would . . . lead to the production of evidence establishing personal jurisdiction over . . . Killingsworth in California." As we have discussed, even if Killingsworth spoke to individuals in California about the Missouri claim, that would not establish that plaintiffs' claims against him arose out of his purposeful availment of California benefits. (*Vons*, *supra*, 14 Cal.4th at p. 446.)

Moreover, Killingsworth filed his amended notice for the motion to quash on July 7, 2022. The motion was not heard until September 8. The record does not reflect that plaintiffs sought jurisdictional discovery, even informally, during those two months or during the life of the case. It would not have been an abuse of discretion for the trial court to conclude that plaintiffs already had time to conduct discovery into Killingsworth's involvement in plaintiffs' claims and that further discovery would therefore not be likely to lead to the production of evidence of facts establishing jurisdiction. (See *Preciado*, *supra*, 87 Cal.App.5th at pp. 972-974 [trial court could reasonably conclude that plaintiffs did not demonstrate discovery was likely to lead to production of evidence of facts establishing jurisdiction because plaintiffs failed to propound jurisdictional discovery when they had the opportunity to do so].)

14

### III.  DISPOSITION

The superior court's order granting the motion to quash is affirmed.  Costs on appeal are awarded to Killingsworth.

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
GROVER, J.

*Whispering Oaks Residential Care Facility LLC v. Killingsworth*
H050479